**People of the State of Illinois, Plaintiff-Appellee,
v. Sherman McGrath, Defendant-Appellant.**

**Gen. No. 50,883.**

First District, Third Division.

March 2, 1967.

Allen S. Pierce and Morris Goldman, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a conviction after a bench trial for contributing to the sexual delinquency of a child. Defendant was sentenced to thirty days in the county jail and fined one hundred dollars ($100).

Defendant contends that the magistrate considered incompetent and prejudicial evidence; that the magistrate assumed the role of an advocate rather than that of an impartial trier of the case, and that the guilt of the defendant was not proved beyond a reasonable doubt by the uncorroborated testimony of the complaining witness.

Edward Mattson, Jr., the complaining witness, testified that he spent the night of April 9, 1965, at the home

of defendant, while visiting with defendant's stepson, Frank Homer. The Mattson boy further stated that about 12:30 a. m., while he was asleep, defendant "tried putting his mouth over my penis and I woke up and I said to him what are you doing and he said nothing and I told him to leave me alone and he just walked out." The next morning Mattson, Jr., told Homer of the incident and the latter said the witness should tell no one and that defendant would never do it again. Therefore complainant did not tell his parents. A month or so later Mattson, Jr., and another friend discussed the matter, and that friend told Homer what Mattson, Jr., had said. Thereafter Homer and Mattson, Jr., had an argument about the incident, after which Homer informed defendant and his wife of Mattson's, Jr.'s accusation.

McGrath went to the Mattson home to discuss the matter. This was the first time Mattson, Jr., said anything of the incident to his parents. The parents had an argument with defendant and the next day Mattson, Sr., signed a complaint against McGrath.

According to McGrath, on April 9, 1965, he arrived home from work about 4:00 p. m. His wife was not working that night and together they went to a pet shop and purchased a monkey. Defendant presented a check into evidence which was signed by him, dated April 9th, and payable to the Petland Shop. He testified that the complaining witness was at his home that night, along with one Phil LeClair, but that only the latter remained overnight. He denied that the alleged act of perversion occurred. His story was corroborated by the testimony of his wife. Frank Homer also testified that Mattson, Jr., did not spend the night at his house, but that LeClair did.

■ Defendant first contends that the magistrate considered incompetent evidence prejudicial to defendant in deciding the case. Some of the court's questioning of the Mattson boy, was as follows:

231

"The Court: What was said, what did he say to you or to your father and what did you or your father say to him?

"The Witness: I was arguing with Frank, his son, the night before because I had asked if anything unusual had happened to Frank Kasper when he spent the night at their house. And we were arguing about it and everything.

"The Court: You are saying you asked another young man, is that correct?

"The Witness: Yes.

"The Court: Point him out.

"The Witness: (Pointing to another youngster, Frank Kasper.)

"The Court: You were discussing this later on with another youngster, is that correct?

"The Witness: Yes.

"The Court: You asked this other young man if the defendant had ever tried to do anything to him?

"The Witness: Yes.

"The Court: What did he say.

"The Witness: He said no. He asked me why and I told him what had happened and what Frank had said to me about not telling anybody but Frank Kasper said a lot of people already in the neighborhood knew about Mr. McGrath.

"The Court: How did they already know?

"The Witness: Well he had tried it on someone else too."

Clearly the court admitted hearsay evidence in allowing these relations of conversations with others concerning actions and reputation of the accused. Further, an examination of the record shows that the hearsay evidence elicited was of the most damaging nature to defendant.

■ The State argues that the admission of this evidence is not error insofar as there is a presumption that the judge in deciding a case considers only the competent evidence. Although that is generally true, the court in People v. Smith, 55 Ill App2d 480, 204 NE2d 577, pointed out that there are three Illinois cases which hold that the presumption is applicable to chancellors in equity, but does not follow through to criminal cases. People v. Reichert, 352 Ill 358, 185 NE 585; People v. Arendarczyk, 367 Ill 534, 12 NE2d 2; People v. Borrelli, 392 Ill 481, 64 NE2d 719.

While we realize that a long line of decisions affords a criminal judge this favorable presumption, the foregoing three cases have not been commented upon in any of the cases in the line reciting the contrary rule. With or without the presumption, the Smith case held on page 488 that the judgment will be reversed "if it affirmatively appears that he considered incompetent evidence prejudicial to the defendant."

At the hearing on the motion for a new trial the following discourse occurred:

"Mr. Pierce (defense counsel): . . . And further in several areas the answers were not responsive to Your Honor's questions. That is why I also feel these are bases for a new trial for the defendant.

"The Court: Did you make the proper objections?

"Mr. Pierce: Your Honor, the Court was asking the questions.

233

"The Court: That makes no difference. No one would put you in jail if you objected. It is done here everyday.

"Mr. Pierce: Every case is different. Your Honor, in the case of People v. Jenkins, it states that the Court, absent of objections is not obliged to permit voluntary testimony which has no relevancy to the case.

"The Court: It is not obliged, but that does not put iron clad rules around my shoulders. It's discretionary with me. I am not obliged."

From the foregoing colloquy it would appear that the magistrate acted as prosecutor everyday and that attorneys regularly objected to his improper questions. It could well be reasoned therefrom that in absence of objections to his questions, he relied on the nonresponsive answers and voluntary testimony of no relevance to the case on trial in reaching a decision on the matter of guilt.

We feel that the magistrate in the instant case displayed a reliance on prejudicial evidence which was incompetent. During the argument on the motion for a new trial the court offered excuses for the witness' failure to tell his story at the time of occurrence, and also mentioned the boy's testimony that word was out in the neighborhood about the defendant. These statements lead us to believe that the magistrate relied at least in part on hearsay evidence.

 Because defendant failed to object to the hearsay testimony the State contends these errors cannot be considered on appeal. However, every defendant is entitled to a fair trial, and if on the face of the record it appears that he did not get one, it is the duty of this court to consider that matter, despite the fact that

objections were not urged. People v. Moore, 9 Ill2d 224, 137 NE2d 246; People v. Morgan, 20 Ill2d 437, 170 NE 2d 529. Our Criminal Code provides that plain errors may be noticed on appeal although not brought to the attention of the trial court if they affect substantial rights of the defendant. (Ill Rev Stats 1963, c 38, par 121–9(a).) We feel that this case comes well within the realm of this provision and the aforementioned cases.

Defendant also contends that the magistrate assumed the role of an advocate or prosecutor in his questioning of the complaining witness. This interrogation brought out the hearsay evidence discussed above and other testimony of conversations with third persons out of the presence of defendant. The final question by the court of this witness was: "This happened in the City of Chicago in the County of Cook?" Thus the magistrate went so far as to prove up venue for the prosecution. The State's Attorney then said: "I think that Your Honor has covered everything." The magistrate then said to defense counsel: "You may cross-examine the witness." All of the testimony of the complaining witness in support of the allegations against defendant was brought out by the court's questioning. The magistrate became the prosecutor. He also discarded his robe of impartiality in a discussion in reference to the date of the offense. The complaint provided that the alleged offense took place "on or about April 9, 1965." In all questioning of witnesses that date was specified. Defendant prepared his defense with that date in mind and presented an alibi covering the time involved. With all evidence directed to April 9th, when the defense counsel at the hearing on the motion for new trial suggested that it was a case of the statement of defendant against that of complaining witness, the court replied: "that is approximately the date; the Complaint takes care of that. It does not have to occur right on that date, it might

have been a day before or a day after." The magistrate clearly did not follow the evidence in this respect.

██ Again, at this hearing, when the question of the admission of hearsay came up, the court did not deny this but merely made a feeble effort toward justification of his actions by telling counsel he should have objected if he did not approve of the questions. We do not think that when a magistrate becomes the prosecutor it is incumbent upon defendant or his attorney to object in order to urge error in this court. Defense counsel for numerous reasons may have decided it was in his best interest not to antagonize the magistrate, as he had already indicated he was biased in favor of the prosecution.

██ While the propriety of judicial examination is determined by the circumstances in each case, and rests largely in the discretion of the trial court, the line of propriety is clearly crossed when the judge departs from his function as a judge and assumes the role of prosecutor. People v. Trefonas, 9 Ill2d 92, 136 NE2d 817. McGrath was assuredly prejudiced by the attitude and actions of the magistrate in this case.

Because we feel that the defendant should have a new trial for the reasons expressed above, it is unnecessary to delve into defendant's contention regarding the weight and corroboration of the evidence against the accused. The judgment of the court will be reversed and remanded.

Reversed and remanded.

SCHWARTZ and DEMPSEY, JJ., concur.