THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN G. OLSON, Defendant-Appellant.

(No. 55469;

First District—December 23, 1971.

John L. White, of Chicago, (Robert K. Kelty, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Robert C. Samko, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant was indicted for attempt robbery. After a bench trial, he was convicted of that crime and sentenced to a term of one to three years. On appeal he contends that the conviction must be reversed because there was lack of proof at trial to show the specific intent necessary to prove the charge of attempt robbery; that he was not proved guilty beyond a reasonable doubt; and that the actions and words of the trial judge belie the finding of guilty.

On July 11, 1968, at about 7:45 P.M., the complaining witness entered the vestibule of her apartment building and noticed a man approaching. As she opened her mailbox, the man asked if her husband was home. He

then pointed a gun at her. In response to his questions, she stated that she had eleven dollars on her person, had no jewelry, and that there was a portable television set in the apartment. He refused her offer of the eleven dollars. She opened the inner door of the building, and they started up the stairs. She again offered him the eleven dollars, but once more he refused it. He puckered his lips as if to kiss her, but did not touch her. He suddenly left her standing on the steps and walked out of the building. Her husband called the police. She subsequently identified defendant from a photograph. She also identified him at a lineup and at trial.

On July 29, 1968, a police officer notified the complaining witness that they had arrested John Olson and requested that she come to the police station to identify him. She testified that at the police station she entered a room in which four men stood facing her. She was about 25 feet from the men. They were asked to state their names, and defendant answered "John Olson." The four men were directed to turn profile and halfway around in order to give her additional views. On direct-examination complainant stated that she asked an officer if she could step closer to the men because she had not seen enough. On cross-examination she testified that she was sure defendant was the man as soon as she entered the room in which the lineup was conducted.

The complaining witness originally stated that she noticed at the time of the crime that her assailant had teeth missing and that his teeth were bad. She subsequently testified that he had one tooth missing. At the lineup she did not notice whether defendant had teeth missing.

Defendant presented four alibi witnesses. Defendant's parents testified that at about 7:15 P.M. they visited his home. Defendant was talking on the telephone and one of his children opened the door for them. They stayed for over an hour. Before they left, Larry Quist, a friend of defendant, arrived. Quist testified that he discussed the joint operation of an auto repair business with defendant, and stayed until 10:30 P.M. Ralph Riley, a neighbor, testified that he visited defendant about 9:00 P.M. Defendant had purchased lumber for him and he came to pay defendant for the lumber. The entry of the check in Riley's checkbook along with the cancelled check evidenced payment on that date. Riley also testified that while he was working in front of his home earlier in the evening he notified defendant in his living room.

Defendant, an electric contractor, testified that he was at home that evening. Defendant stated that he had a full upper plate since he was sixteen years old. The plate had one tooth missing. At the lineup he was directed to remove his false teeth and then put them back in.

After all the evidence had been presented and closing arguments had been made, the trial judge asked the complaining witness to approach

the bench. Commenting that the procedure might be improper but that he was seeking the truth, the judge pointed out to the complaining witness that she had heard all the witnesses testify that defendant was home at the time of the crime. He then asked if she were still sure that defendant was the man. She replied that she was positive. The judge then entered the finding of guilty.

At the hearing in aggravation and mitigation, and at the time of sentencing, the trial judge participated in long colloquies with defense counsel and with defendant himself as to why he found him guilty. Once the judge stated that he found him guilty because of the evidence. At another point in the proceedings, the judge stated:

"Young fellow, I want to say this, and this is maybe reversible, I don't know. As I review the cases, it is in the record, that one person with a positive identification is enough to convict. The lady said you had a gun in her face. You are going to get one to three years in the State penitentiary and I want to tell you, and it is in the record, I don't know whether you did it or not, nor does the State's Attorney, nor anybody in this court; the court reporter, the bailiff."

The following dialog also occurred:

"MR. WHITE (Defense Counsel): If it were a gun, Judge.

THE COURT: Well, the lady said there was a gun in her face. I don't know if there was a gun, nor do you, or he, or anybody in this courtroom, except him and the lady, and the guy upstairs, if there is one."

And finally after defendant stated that he could not understand how the judge could send him to jail while remaining unsure of his guilt, the judge said:

"I don't know whether you did that or not. I'm not ashamed to say that. Even though the State's Attorney won't say it, they don't know whether you did it or not, because they weren't there."

■■ We reject defendant's first contention that there was a lack of proof at trial to show the required specific intent necessary to prove Attempt Robbery. Intent may be proved from the acts and circumstances surrounding the acts of the defendant. (*People v. Moore*, 77 Ill.App.2d 62, 222 N.E.2d 142.) In the case at bar, the assailant pointed a gun at the victim and asked for valuables. His subsequent rejection of the money and sudden departure, for whatever reasons, did not negate the circumstances from which the trier of fact could have drawn the element of intent.

To determine the issues on appeal properly, we deem it necessary to consider defendant's remaining contentions jointly: whether the words and actions of the trial judge were inconsistent with the finding of guilty, and whether the evidence produced was sufficient to prove him guilty

beyond a reasonable doubt. We believe that when the statements of the judge are considered together with the evidence offered at trial, the judgment of conviction must be reversed.

■■ The State argues that the judge, in making the statements to which we have referred, merely indicated that no human being "other than those present at an event can be one hundred percent certain as to what transpired." It further maintains that the comments only reflected that no crime can be proved beyond all possibility of doubt. These arguments by the State are not persuasive because of the manner in which the judge's comments were made. In stating that he did not know whether defendant was the perpetrator of the crime, the judge emphasized that such a discussion by him might constitute reversible error but he wanted it in the record that he didn't know whether defendant committed the crime. At another juncture, the judge said that he was not ashamed to admit that he did not know whether defendant committed the crime. The judge also said that while the prosecutor would not admit it, he also did not know whether defendant had committed the crime. These were not just philosophical statements as to the human impossibility of ever proving a defendant guilty beyond all possibility of doubt. Rather they reflect a legal uncertainty as to whether defendant was guilty beyond a reasonable doubt. These comments revealing the judge's uncertainty must also be viewed in the light of his actions, after the evidence had been heard and argument made, in seeking reassurance from the complaining witness that she was sure defendant was the right man.

In addition to these actions and comments by the court, defendant's conviction was based upon a single identification which is open to scrutiny because of the potentially suggestive mode of identification employed in the instant case. (See *People v. Minor*, 95 Ill.App.2d 447, 237 N.E.2d 749.) The victim was informed that the police had arrested John Olson, and was requested to come to the police station to identify him. In her presence, the men in the lineup were instructed to give their names, and defendant said that he was John Olson. Additionally, there was a contradiction in her testimony as to her conduct at the lineup. She first testified that she asked to step up closer because she had not seen enough to be sure. She subsequently testified that she was sure defendant was the man as soon as she entered the lineup room. Moreover, she originally stated that her assailant had teeth missing and that his teeth were bad. On the witness stand she corrected that to state that he had one tooth missing.

■■ Ordinarily contradictions and discrepancies in testimony are to be resolved by the trier of fact. And it is so axiomatic as not to require citation of authority that the testimony of one credible witness alone, if positive, is sufficient to convict even where the testimony is contradicted

by the accused. Admittedly, the complaining witness in the case at bar was with her assailant for several minutes and had a good opportunity to view him. However when we consider her uncorroborated identification testimony, contradicted as it was by defendant and his plausible alibi witnesses, along with the statements and actions of the trial judge, we can only conclude that the proof of guilt was so unsatisfactory as to justify a reasonable doubt of guilt.

Accordingly, the judgment of the Circuit Court is reversed.

Judgment reversed.

DEMPSEY and McGLOON, JJ., concur.