THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT LEE BISHOP, Defendant-Appellant.

First District (3rd Division)   No. 85—1112

Opinion filed January 18, 1989.

Randolph N. Stone, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Patricia Y. Brown, and James M. Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Robert Lee Bishop, appeals from a judgment of the circuit court of Cook County entered upon a plea of guilty for murder and attempted armed robbery. On appeal, defendant argues that (1) he was denied effective assistance of counsel and (2) the trial court erred in sentencing him to 95 years in prison. We affirm.

On the evening of May 30, 1984, Oralia Valasquez was exiting the elevated train station at 19th & Kedzie when a gun was placed to her head and she was killed. Defendant and his codefendant, Charles Johnson, were subsequently arrested and charged with murder and attempted armed robbery.

Defendant and Johnson were tried jointly before a jury. Three civilian witnesses testified in the State's case in chief. Essentially, the witnesses stated that they were across the street at the time of the incident and heard the shot from inside the station. They saw Johnson exit the station after the first shot was fired, saw defendant fire a second shot into the station and saw defendant and Johnson flee the scene. All of the witnesses testified that they were familiar with both defendant and Johnson and had seen them around the neighborhood. The witnesses further testified that they could see clearly and the lighting conditions were good.

Officer James Cornelison testified that he responded to a call at the elevated station at 19th & Kedzie. When he arrived, Cornelison found Valasquez lying facedown in a pool of blood. She appeared to have a gunshot wound to the right side of her head and two small scratches at the base of her neck. Cornelison further testified that when he interviewed Johnson, Johnson stated that defendant suggested that they rob someone and that defendant showed him a revolver. Johnson and defendant went to the train station together, but Johnson stayed outside as a lookout. When Johnson heard the first shot, he ran across the street. Cornelison further stated that after Johnson was in police custody, he led the police to an alley behind 1936 S. Spaulding where the gun that was used to shoot Va-

lasquez was found underneath a garbage can.

Assistant State's Attorney Dane Cleven testified that he took court-reported statements from Johnson and defendant. In defendant's statement, he stated that while he was inside of the elevated train station, he pulled a gun and pointed it at Valasquez. Johnson then began going through Valasquez' purse. A struggle ensued between Valasquez and defendant and the gun went off. Johnson ran out of the train station but defendant continued to struggle with Valasquez. The gun went off again and Valasquez fell to the ground.

Dr. Robert Kirschner of the Cook County medical examiner's office also testified for the State. Kirschner performed the postmortem examination on Valasquez' body. Kirschner stated that Valasquez died from a single gunshot wound to the right temple region. The wound inflicted was a contact wound occurring when the muzzle of the weapon was directly in contact with Valasquez' head at the time the weapon was fired. Kirschner also testified that there was a prominent red-purple bruise on the side of Valasquez' head approximately three inches in length and one-half inch in diameter. This marking, according to Kirschner, was consistent in size and shape with being struck with the length of the barrel of the gun.

After the State rested, defendant took the stand and testified on his own behalf. Defendant testified that he and codefendant decided to make some "fast money" by robbing someone at the train station. Before defendant could make any further statements, the court excused the jury and conferred with both defense counsel and the State's Attorneys in chambers. The court inquired as to whether Bishop was about to make a confession in open court. It was the court's concern that defendant was aware of what he was about to say and that defendant had been adequately advised as to the consequences of a confession in open court. Defendant's counsel then informed the court that he had advised defendant that by testifying on the record that he did not intend to kill the victim, he would in all likelihood receive a lighter sentence than if he did not testify at all.

The court advised defendant's counsel to confer again with defendant to assure that defendant was well aware of the consequences of his action. After conferring with defendant, defendant entered a plea of guilty. When the jury returned, the court instructed the jury that defendant was no longer on trial and any evidence that was admissible only as to Bishop had been removed.

Defendant's sentencing hearing was held on March 20, 1985. Following evidence in mitigation and aggravation and a statement

by defendant, the court imposed upon defendant the maximum extended term of 80 years for murder and the maximum extended term of 15 years for attempted armed robbery, consecutively. This appeal followed.

Defendant first argues that he was denied effective assistance of counsel. Defendant asserts that the representation received produced a mixture of a jury trial and a subsequent guilty plea which deprived defendant of benefits he would have received in an unmixed procedure. Therefore, this cause should be remanded to allow defendant an opportunity to withdraw his plea and plead anew. We disagree.

■ Representation by counsel is considered constitutionally deficient if the incompetence produced substantial prejudice to the defendant without which the result would probably have been different. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 227, 498 N.E.2d 547, 557.) Moreover, effective assistance of counsel refers to competent, not perfect, representation. Thus the focus is therefore on the totality of the circumstances rather than isolated instances during the representation. 148 Ill. App. 3d at 227, 498 N.E.2d at 557.

In the instant case, the record indicates that the State in its case in chief presented overwhelming evidence of defendant's guilt and his involvement in the crime perpetrated against Valasquez. After hearing the State's version of how the crime was committed, defendant's counsel decided that it would be in defendant's best interest to tell the jury his version of how Valasquez was killed. Once defendant began to testify, his testimony was interrupted by the trial judge. Following a conference with the judge as well as with defendant, defense counsel advised defendant that it would be in his best interest not to continue to testify and to enter a plea of guilty. Prior to sentencing, defendant was allowed to make a statement. In defendant's statement, he told the trial judge his version of how Valasquez was killed. Defendant stated:

"I never went up to that 'L' station intending to take that lady's life. I intended to do a robbery.

\* \* \*

As I announced a robbery, the lady grabbed the pistol. I never intended to shoot the lady.

\* \* \*

I'm sorry for the lady's life being taken. I know I have to be punished for the mistake I made and for attempting to rob this lady."

The reason defense counsel wanted defendant to testify initially was to give defendant an opportunity to tell his version of how the crime was committed. The strategy of having defendant tell his version was to affect the sentencing and not the judgment of guilty entered either on a plea or on a jury's finding.

■ We do not believe, as defendant urges, that the trial judge was somehow biased against defendant because he pled guilty in the middle of his trial by jury. Defendant has presented us with no concrete proof from the record that if he had been found guilty by the jury and then sentenced by the court, or if he had pled guilty from the outset, his sentence would have differed. To the contrary, the record supports our conclusion that the course of defendant's trial was governed by defense counsel's trial strategy. Although the strategy chosen may be one that we would not adopt, we certainly cannot say that it is one that amounts to incompetence of counsel. Nor can we say that if counsel had not chosen this strategy, defendant's sentence would have differed. Thus, defendant was not denied effective assistance of counsel.

Next, defendant argues that the trial court erred in sentencing him to extended terms of 80 years for murder and 15 years for attempted armed robbery. Defendant argues that the sentence is excessive in light of his age and background and that this crime was not a "heinous and brutal" crime requiring extended consecutive sentences. We disagree.

■ Under Illinois law, the entire spectrum of facts surrounding an incident must be analyzed and evaluated to determine whether a defendant's sentence is excessive. (*People v. Trimble* (1985), 131 Ill. App. 3d 474, 476, 475 N.E.2d 971, 973.) Because the trial court is in a better position to consider the myriad of factors involved, the trial court's sentence will not be disturbed on review absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

■ In the instant case, defendant was sentenced after the court heard evidence in aggravation and mitigation. In aggravation, the State argued that the brutal way in which Valasquez was pistol-whipped and shot with the muzzle of the gun placed directly against her head mandated the maximum sentence. Also, because the two crimes were separate and independent, the State sought consecutive sentences. In mitigation, defense counsel argued that defendant's youth, lack of substantial criminal background and remorse represented good rehabilitative potential.

Giving adequate consideration to defendant's age, lack of crimi-

nal background and the heinous nature of this crime, the court felt that the extreme brutality justified the imposition of extended consecutive terms for both murder and attempted armed robbery. In fact, prior to sentencing defendant, the court stated:

"I agree with the state's characterization of the offense in this case. This did involve a felony murder, ***.

It did involve conduct which, *** manifestly was wanton and cruel.

The character of the offense involves a number of values that a civilized society is constantly fighting against, a value system which is, I guess, animalistic ***.

I think in many respects the sentence that I impose today is principally one which has to accommodate the interests of society."

Based upon our reading of the record, we do not find that the trial court abused its discretion in sentencing defendant. As the trial judge stated, this was a wanton and cruel crime. Defendant met with his codefendant, Johnson, and conspired to commit a crime by robbing an unsuspecting victim. During the course of this attempted robbery a senseless and brutal murder of an innocent and unarmed citizen occurred. This attempted robbery and shooting took place in a public transportation station where any number of innocent persons could have been injured or killed. Sentencing defendant to consecutive extended terms was necessary, as the trial judge pointed out, to protect the public from further criminal conduct by defendant. We therefore find that the trial court did not abuse its discretion in sentencing defendant to consecutive extended terms.

Accordingly, defendant's conviction is affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.