THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MORRIS
DENTON, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1611

Opinion filed December 28, 1993.

Michael J. Pelletier and Nan Ellen Foley, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan Schierl, and Catherine A. Hufford, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Following a bench trial, the trial court found defendant, Morris Denton, guilty of two counts of first degree murder, and it sentenced him to 40 years in the Illinois Department of Corrections. Defendant appeals from the conviction and sentence.

I

Police picked up defendant, then 14 years old, around noon on November 11, 1989, a short distance from his home, while defendant was with his cousin. An officer told the cousin to tell defendant's mother that police took defendant for questioning. Defendant's mother, Berdia Smith, did not do anything immediately because the police often talked to her son.

Around 3 p.m. that afternoon police arranged transfer of defendant to area headquarters. Defendant arrived at headquarters around 4 p.m. and met Detective John McCann. McCann requested a youth officer, but before the officer could arrive, McCann read defendant his *Miranda* rights and asked him if he wanted to answer questions regarding the murder of Pedro Martinez. A fireman had found the corpse of Pedro Martinez in an abandoned building where someone set a fire on October 29, 1989. McCann asked defendant questions related to Martinez for about 15 minutes before the youth officer arrived. The youth officer then reminded defendant of his rights.

Smith went to the local police station later that afternoon. An officer told her that her son was at the station, so she waited. Around 5 p.m. an officer told her defendant had been taken to area headquarters. She called the headquarters, where an officer told her police were still questioning defendant and she could come talk to defendant at headquarters. Since she had to go to work, she decided just to give the officer her work phone number.

After questioning defendant police charged him with first degree murder. Prior to trial defendant moved to suppress testimony from

the officers who interviewed him. In support of his motion defendant testified that police who interviewed him never asked him if his parents knew where he was and they never told him he had a right to have a youth officer present. He also said McCann and his partner struck him.

McCann testified that when defendant arrived at headquarters, McCann's partner asked him if he wanted to contact his parents. Defendant said his mother knew where he was. McCann asked if defendant wanted to wait for a youth officer. Defendant said he did not care and he would talk to the officers. McCann said that neither officer struck defendant.

The trial court found McCann credible and defendant incredible. Considering the totality of the circumstances, the trial court found that police did not coerce defendant to make any statements, so it denied the motion to suppress.

Defendant challenges the ruling on appeal, arguing that the trial court should have suppressed the testimony because the officers obtained the statements in violation of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, par. 801—1 *et seq.*). We find that we need not decide whether police violated the statute, because even if they did, we would not reverse the trial court's ruling on the motion to suppress.

Under the Juvenile Court Act, a police officer who takes a minor into custody due to suspected violation of criminal statutes "shall \*\*\* immediately make a reasonable attempt to notify the [minor's] parent \*\*\*; and the law enforcement officer shall without unnecessary delay take the minor to the nearest juvenile police officer." (Ill. Rev. Stat. 1989, ch. 37, par. 805—6(2).) Failure to comply with this provision does not require exclusion of the minor's statements. (*People v. Stachelek* (1986), 145 Ill. App. 3d 391, 402, 495 N.E.2d 984.) Such a failure is a factor for the court to consider in determining the voluntariness of statements. *People v. Knox* (1989), 186 Ill. App. 3d 808, 815-16, 542 N.E.2d 910.

Juvenile confessions

> "are generally subjected to the same scrutiny as confessions of adult defendants. [Citation.] The test is whether, under the totality of the circumstances, the statement was made freely, without compulsion or inducement of any sort, with consideration given to the characteristics of the accused as well as the details of the interrogation. [Citation.] Nevertheless, our supreme court has also recognized that the receiving of an incriminating statement by a juvenile is a sensitive concern requiring great care, in absence of counsel, to assure the juvenile's confession was neither coerced or

suggested, nor a product of fright or despair." (*Knox*, 186 Ill. App. 3d at 812.)

This court will reverse a trial court's determination that a confession is voluntary only if that determination is contrary to the manifest weight of the evidence. *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.

■ To determine voluntariness of statements, the court may consider the age, intelligence, experience and physical condition of the defendant, the length of interrogation, threats, promises, or physical coercion, as well as the presence of a parent or youth officer. (*People v. Martin* (1984), 102 Ill. 2d 412, 427, 466 N.E.2d 228; *People v. Cardona* (1992), 240 Ill. App. 3d 110, 115, 608 N.E.2d 81.) Although defendant was only 14 years old, he had considerable experience dealing with police, as his mother said police often talked to him. Defendant did not complain that he was hungry or tired during questioning. Police took him to the station for questioning around noon, and they claim that he confessed by 4 p.m. Two different sets of officers questioned him and transported him in that time, and the second questioning began only 15 minutes before defendant made his statements. While defendant claimed police struck him, the trial court did not believe that testimony. The officers swore that they did not strike or otherwise coerce defendant to talk. On the basis of its weighing of the credibility of the testimony, and in light of all the circumstances, the trial court found that defendant made voluntarily whatever responses he made to police questions. Even if we were to find that the police violated the Juvenile Court Act by failing to contact a youth officer or defendant's parents sufficiently promptly, we cannot say that the finding of voluntariness is contrary to the manifest weight of the evidence.

## II

The State indicted defendant on two counts of first degree murder, charging defendant with intentional murder in count I, and with murder by performing acts which he knew created a strong probability of death or great bodily harm in count II.

Kenneth Brandt testified at trial that he had known defendant for three years by November 1989, when defendant asked him, "[I]f I tell you something, will you tell anybody?" When Brandt said no, defendant told him that he and four other members of the Latin Kings, a street gang, took a member of a rival gang into an abandoned building and beat him with table legs until he looked "like a pancake." They later set the building on fire. Brandt testified that defendant "[s]ounded happy" when telling him this.

Detective McCann testified that during questioning at area headquarters, defendant told him that on October 28, 1989, James Phillips came to defendant's home with a shotgun and asked defendant to keep the gun for him. Defendant said no. A few minutes later, he saw Phillips with Ricky Hernandez, Xavier McElrathby, Matthew Przyplowski and Pedro Martinez near defendant's home. Martinez said he was a member of La Raza, and the others told him they were in an allied gang. They were actually members of the Latin Kings, enemies of La Raza. They convinced Martinez to come party with them. Hernandez had a handgun, while McElrathby and Phillips had shotguns. When they entered the abandoned building, Hernandez told defendant to grab Martinez. Hernandez, Phillips and McElrathby hit Martinez with table legs and the shotguns while defendant held him. Defendant then tripped Martinez. Defendant told McCann that McElrathby said he set the building on fire the next day.

The medical examiner testified that Martinez died from many blunt trauma injuries to the head, neck and torso. He could identify 25 separate injuries and he estimated that Martinez suffered 30 to 50 smaller injuries. He found the imprint of a sneaker on the side of the head, and he found a similar imprint on the chest. He testified that the offenders must have applied significant force to leave the sneaker imprints. Martinez could not have survived more than 10 minutes following the beating.

Defense counsel relied on the argument that the gang members compelled defendant, by threat of harm, to join them, and the compulsion here operated as a defense to the murder charge. Counsel pointed out that according to the Criminal Code of 1961, "A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm." (Ill. Rev. Stat. 1989, ch. 38, par. 7—11(a).) Under section 9—1(b), a defendant found guilty of murder may be sentenced to death only if he was at least 18 years old at the time of the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b).) Since defendant was only 14 years old at the time of the offense, counsel argued that his offense was not "punishable with death" within the meaning of section 7—11(a), so the compulsion operated as a defense. Neither the State nor defendant presented any cases which decided whether a minor, not subject to the death penalty, could use compulsion as a defense to a charge of murder.

Defendant testified that when he saw Hernandez, Phillips, Przyplowski and McElrathby with Martinez, he believed that Hernandez, Phillips and McElrathby were carrying loaded guns. Hernandez told

defendant to come with them. He came because he feared that if he did not the gang members would beat him up. He said he was not then, and had never been, a member of the Latin Kings or any other street gang. When they entered the abandoned building, the four members of the Latin Kings started hitting Martinez while defendant watched from the door. Hernandez told defendant to hit Martinez. Defendant took a plastic stick and hit Martinez twice on the legs. Defendant feared that if he did not the others would beat him the way they were beating Martinez. Defendant then tried to leave but Hernandez told him he better not. When they left, Martinez was still breathing, conscious, and trying to get up. Defendant never spoke to Brandt about the murder, and he never told McCann that he held Martinez's arms or that he tripped Martinez.

On cross-examination defendant admitted that he had a tattoo, which he showed the trial court. The tattoo was a heart with the letters "L K" and a crown with five points. Officer Alfred Thome testified that on October 31, 1989, he saw defendant, McElrathby and Przyplowski spray painting a crown with five points on the wall of a park building. Thome knew the crown to be a symbol of the Latin Kings. The trial court allowed Thome's testimony over defendant's objection because of the compulsion defense.

The trial court found that it did not need to decide whether compulsion could be a defense to murder for minor defendants. The court found defendant's testimony incredible, and it found the State's witnesses credible, so it held that the State proved beyond a reasonable doubt that defendant was not compelled to join in the beating. The trial court found in particular that defendant told Brandt about the murder, and defendant accurately told him that Martinez looked like a pancake when they finished beating him. The court also believed that defendant confessed to McCann. The court found defendant guilty on both counts of first degree murder.

Defendant contends that he did not receive effective assistance of counsel because his counsel advanced compulsion as a defense, and compulsion cannot be a defense to murder. Neither defendant nor the State cites to this court any case which expressly considers the argument counsel advanced at trial. While compulsion is not a defense to murder for defendants over the age of 18 (*People v. Gleckler* (1980), 82 Ill. 2d 145, 156-57, 411 N.E.2d 849), we, like the trial court, need not decide whether compulsion can be a defense to murder when the person charged was under 18 years old at the time of the offense. In view of the evidence that defendant confessed to participation in the murder, counsel attempted to raise a novel defense based on the language of the statute which permits compul-

sion defenses. Counsel presented evidence, from defendant, to show that the defense applied here. Had the trial court believed that evidence and accepted counsel's argument for statutory interpretation, the court would have acquitted the defendant.

■ To prevail on a claim of ineffective assistance of counsel, defendant must show that counsel's conduct "fell below an objective standard of reasonableness." (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) This court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and avoid interfering with the constitutionally protected independence of counsel or restricting the wide latitude counsel have in making tactical decisions." (*People v. Colley* (1988), 173 Ill. App. 3d 798, 809, 528 N.E.2d 223.) Defendant here has not overcome the presumption that counsel's strategy fell within the wide range of reasonable professional assistance. Since counsel's conduct did not fall below an objective standard of reasonableness, defendant's claim of ineffective assistance fails.

## III

In making its findings on the two counts of first degree murder, the trial court said:

"There is testimony in the record that \*\*\* even though the guns were present, they were not used. And so the Court has some doubt as to whether or not the intention was to in fact kill Pedro Martinez, or whether the intent was to do great bodily harm to him.

Therefore, as to count 1 I find there has been proof beyond a reasonable doubt of an intent to kill.

As to count 2, however, that the acts were done which created a strong probability of death or great bodily harm \*\*\*, the Court finds as to that count the defendant has been found guilty beyond a reasonable doubt as to 1st degree murder."

The trial court made no further comment or proof of the state of mind requirement for the conviction.

Defendant now contends that the trial court erred by entering convictions on both murder counts, and asks this court to vacate the conviction for intentional murder in light of the trial court's doubt of the proof of intent murder. Count I alleged commission of first degree murder by an intentional killing; it did not allege that defendant intended to do great bodily harm. The State admits that the court should not have entered convictions for two counts of murder when only one person died (see *People v. Mack* (1984), 105 Ill. 2d 103, 136-37, 473 N.E.2d 880), but the State maintains that this court must

affirm the conviction on the most serious charge, which is intentional murder.

In *People v. Olson* (1971), 3 Ill. App. 3d 240, 278 N.E.2d 861, the State charged the defendant with attempted robbery. The complainant identified the defendant in court as her assailant and the defendant presented several alibi witnesses. The judge at the bench trial said, "I don't know whether you did that or not," (*Olson*, 3 Ill. App. 3d at 243), but it found the defendant guilty. This court reversed because

> "the judge emphasized *** that he didn't know whether defendant committed the crime. *** These were not just philosophical statements as to the human impossibility of ever proving a defendant guilty beyond all possibility of doubt. Rather they reflect a legal uncertainty as to whether defendant was guilty beyond a reasonable doubt." *Olson*, 3 Ill. App. 3d at 244.

■ The judge in the bench trial here similarly expressed real doubt concerning the intentions of defendant and his companions. The offenders beat Martinez brutally with boards and shotguns, and stomped on his face and chest, but they did not shoot him when they could easily have done so. The trial court's comment was not a statement of abstract philosophical doubt; it reflected a legal uncertainty. We emphasize that count I alleged only an intention to murder, not an intention to do great bodily harm. Where the trier of fact has reasonable doubt of the specific intention to kill, it must acquit the defendant on a charge of intentional murder. (See *People v. Stalions* (1986), 139 Ill. App. 3d 1033, 488 N.E.2d 297.) We make no assessment of the adequacy of the evidence to support a conviction for intentional murder, as that is not within our purview. To obtain a conviction the State must convince the trier of fact of "defendant's guilt beyond a reasonable doubt [citations]. *** [I]t is not the function of this court to retry the defendant." (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) Where the trier of fact has reasonable doubt concerning proof of an element of the offense charged, it must not convict the defendant on that charge. The trier of fact cannot defer the question to this court by entering a conviction while harboring doubt concerning an element of the crime charged.

The trial court properly found that defendant committed acts which he knew created a strong probability of death or great bodily harm, and those acts actually caused the death. Therefore, we affirm the conviction on count II and we vacate the conviction on count I, for intentional murder.

## IV

At sentencing defendant's parents testified that he was not a

disciplinary problem until he started having problems with gangs. Defendant said he was sorry for what happened to Martinez. The trial court said:

"The conduct in this particular case was barbaric[. T]his young man was beaten to death in a most brutal manner ***.

*** [D]uring the lengthy trial *** I saw no indication of any remorse whatsoever."

The trial court sentenced defendant to 40 years in the Department of Corrections.

In a separate proceeding, McElrathby pleaded guilty to the charge of first degree murder. He did not challenge evidence, including his confession, that he joined Hernandez, Przyplowski, Phillips and defendant in beating Martinez to death. In accord with a plea bargain, the trial court sentenced McElrathby to 25 years' imprisonment, finding the sentence appropriate due to McElrathby's "potential for rehabilitation, [and] most importantly, [his] remorse in this matter." The trial court found that McElrathby's conduct in prison, as reported in his presentence investigation, indicated good rehabilitative potential.

Defendant argues that the trial court abused its discretion by sentencing him to 40 years' imprisonment, that he must be resentenced because his conviction for intentional murder is vacated and that his sentence should be modified to eliminate the gross disparity between his sentence and McElrathby's sentence.

The trial court is in a better position to consider the myriad of factors involved in sentencing, and its determination will not be disturbed, absent an abuse of discretion. (*People v. Bishop* (1989), 179 Ill. App. 3d 99, 103, 534 N.E.2d 401.) In sentencing the court should consider the defendant's age, credibility, mentality, habits, criminal history, general moral character, education, social environment, and demeanor, along with the nature and circumstances of the crime and defendant's conduct in the commission of the crime. *People v. Center* (1990), 198 Ill. App. 3d 1025, 1033, 556 N.E.2d 724.

■ The court here considered the proper factors. Although defendant had no prior convictions, the court, in assessing defendant's credibility and general moral character, found that he had limited rehabilitative potential, and he showed no sincere remorse for the exceptionally brutal crime. The court could sentence defendant, under the statute, to any term between 20 and 60 years for the first degree murder. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) The trial court sentenced defendant to a term in the middle of the range. We find no abuse of discretion.

The trial court, in explaining the sentence, did not rely in any

way on its finding of guilt on the first count. The court relied instead on the facts shown at trial. Where a court does not rely on a conviction later vacated in arriving at its sentence for a conviction which is upheld, this court need not remand for resentencing. (*People v. Wright* (1987), 161 Ill. App. 3d 967, 978, 514 N.E.2d 817.) We find no need to remand for resentencing on the conviction for first degree murder here, where the court properly considered the facts before it and the pertinent factors to arrive at a sentence in the middle of the available range for the offense.

Finally, defendant argues that his sentence must be vacated due to the gross disparity between his 40-year sentence and the 25-year sentence given McElrathby for the same crime. Although this court will not disturb a sentence imposed by the trial court absent an abuse of discretion, "fundamental fairness and respect for the law require that defendants similarly situated should not receive grossly disparate sentences." (*People v. Milton* (1989), 182 Ill. App. 3d 1082, 1093, 538 N.E.2d 1227.) The court looks to both the culpability of the criminal conduct and indicia of rehabilitative potential in deciding the extent to which defendants are similarly situated. *Milton*, 182 Ill. App. 3d at 1093.

McElrathby pleaded guilty to the charge of first degree murder, effectively admitting that he participated in the brutal murder of Martinez. The conduct for which the trial court sentenced McElrathby was as culpable as the conduct which the State proved defendant committed. Both were members of the gang, both apparently taking orders from Hernandez when defendant held Martinez so that McElrathby and the others could beat him with shotguns and other pieces of wood used as clubs.

McElrathby was a few months younger than defendant. Defendant had no prior convictions, while McElrathby had one conviction for armed robbery. However, the trial court expressly found McElrathby sincerely remorseful, unlike defendant, and based on McElrathby's work in prison it found that he, and not defendant, had rehabilitative potential warranting a reduction in sentence. The trial court also based the reduction in part on McElrathby's willingness to acknowledge responsibility for his acts, as shown by his guilty plea.

In *Milton*, the defendant received a 30-year sentence for armed robbery, the statutory maximum, while a codefendant received a sentence of $8^1/2$ years, near the minimum. The appellate court found that several factors, including the codefendant's guilty plea, justified some sentencing disparity, but the imposition of a sentence almost four times the length of codefendant's sentence constituted an abuse of discretion. The court reduced the defendant's sentence to 12 years'

imprisonment, leaving it 40% longer than codefendant's sentence. *Milton*, 182 Ill. App. 3d at 1096.

In *People v. Ralon* (1991), 211 Ill. App. 3d 927, 570 N.E.2d 742, the trial court sentenced the defendant to 12 years' imprisonment and his codefendant to 7 years' imprisonment for the same armed robbery. This court said:

"The sentencing court had sufficient support in the record to explain the five-year disparity in sentences on a basis other than one which can fairly be called arbitrary and capricious. The sentencing court's perception of perjury at the motion to suppress, at trial, and the defendant's persistence in protesting his innocence and that his rights were violated obviously weighed heavily in the sentencing court's mind. Under the circumstances of this case, we cannot say that the sentencing judge abused his discretion in imposing a 12-year sentence on defendant." (*Ralon*, 211 Ill. App. 3d at 961.)

Our decision left the defendant's sentence almost twice as long as the codefendant's.

■ Here, some disparity in sentences is justified by McElrathby's guilty plea (*Milton*, 182 Ill. App. 3d at 1094), his remorse (*People v. Sanchez* (1987), 163 Ill. App. 3d 186, 191, 516 N.E.2d 556), and the trial court's assessment of his rehabilitative potential (*Milton*, 182 Ill. App. 3d at 1093). The trial court did not believe defendant's expression of remorse and it found no special indication of rehabilitative potential. We cannot say that the record shows the trial court's findings to be erroneous. The trial court could also have increased defendant's sentence based on a perception of perjury, particularly because defendant persistently denied gang membership despite his tattoo and evidence that he and persons he knew to be gang members painted a gang symbol on a park building. Also, as the trial court observed, Phillips would not have asked defendant to keep the loaded shotgun for him if defendant were not also a member of the Latin Kings.

The trial court reduced McElrathby's sentence to almost 40% less than defendant's sentence. The 15-year difference between defendant's 40-year sentence and McElrathby's 25-year sentence is similar to the 5-year difference between the defendant's 12-year sentence and the codefendant's 7-year sentence in *Ralon*. The disparity is also similar to the disparity between an $8^{1}/_{2}$-year sentence and a 12-year sentence approved in *Milton*. Under the circumstances of this case, as in *Ralon*, we cannot say that the trial court abused its discretion by imposing sentences of such disparity on the two offenders.

414

For the reasons stated above, we affirm the conviction and sentence for first degree murder by committing acts which defendant knew created a strong probability of death or great bodily harm. The conviction on the charge of intentional murder is vacated.

Affirmed in part; vacated in part.

SCARIANO and DiVITO, JJ., concur.