THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LLOYD PERKINS, Defendant-Appellee.

Fifth District   No. 5—92—0415

Opinion filed August 11, 1993.—Rehearing denied September 14, 1993.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The issue presented in this appeal is whether a defendant who is in jail for an offense for which he has asserted his fifth amendment right to counsel can be surreptitiously questioned by undercover agents regarding a second, unrelated offense. We hold that under the circumstances and facts of this case, the surreptitious questioning by undercover government agents violated defendant's fifth amendment privilege against self-incrimination. U.S. Const., amend. V.

On Saturday, March 30, 1986, defendant was arrested for aggravated battery. While in jail over the weekend, an undercover law enforcement officer and undercover informant entered defendant's jail cell and elicited incriminating statements from defendant regarding a 1984 murder. On February 18, 1987, defendant's motion to suppress those statements was heard, and later, that motion was granted by the trial court. This court affirmed the trial court's order (*People v. Perkins* (1988), 176 Ill. App. 3d 443, 531 N.E.2d 141), and the United States Supreme Court reversed the decisions of both courts in *Illinois v. Perkins* (1990), 496 U.S. 292, 110 L. Ed. 2d 243, 110 S. Ct. 2394, finding that the undercover agents were not required to give defendant *Miranda* warnings. The Supreme Court was not asked to rule

upon the facts or issues presented in this appeal. *Illinois v. Perkins* (1990), 496 U.S. 292, 110 L. Ed. 2d 243, 110 S. Ct. 2394.

After the case was remanded to the trial court, defendant filed a second motion to suppress, alleging for the first time that he had asserted his right to counsel after his arrest on the aggravated battery charge and that the subsequent questioning by the undercover agents violated his sixth amendment rights. (U.S. Const., amend. VI.) However, on appeal defendant does not argue that his sixth amendment rights have been violated but only that his fifth amendment privilege against self-incrimination was violated when the undercover agents questioned him without an attorney present and without informing him that his statements could be used against him.

The trial court granted defendant's motion to suppress, stating that defendant had testified that he had requested an attorney immediately upon his arrest for aggravated battery but the officers involved could not remember if defendant had requested an attorney. The court ruled that, considering all the testimony presented, the State had failed to meet its burden of proof regarding the voluntariness of defendant's incriminating statements to the undercover agents. In its order granting the motion to suppress, the trial court quoted from *McNeil v. Wisconsin* (1991), 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204: "Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present." (Emphasis in original.) *McNeil*, 501 U.S. at 177, 115 L. Ed. 2d at 168, 111 S. Ct. at 2208, citing *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093.

The State again appeals the trial court's order granting defendant's motion to suppress, arguing that defendant's fifth amendment privilege against self-incrimination was not violated and also that the trial court's ruling that defendant had invoked his right to counsel was against the manifest weight of the evidence. Thus, we must reiterate the evidence presented at the hearings on defendant's second motion to suppress. However, because the case has already been appealed to this court, we will reiterate only those facts brought out in the second motion hearing and we refer to our prior decision for a more complete recitation of the facts. *People v. Perkins* (1988), 176 Ill. App. 3d 443, 531 N.E.2d 141.

Defendant testified in his own behalf at the hearing on the second motion, something he did not do at the hearing on the first motion. Defendant testified that on the morning of March 30, 1986, a group of police came to his girl friend's trailer and asked him to go to the po-

lice station with them so that they could ask him a few questions. Defendant went to the station voluntarily, and while he was there, a call came in over the radio that the officers who were conducting a consent search of the girl friend's trailer had found a shotgun. Defendant was placed under arrest but was not given his *Miranda* warnings at this time. From the record of the case after the first motion to suppress, it appears that defendant was given his *Miranda* warnings upon arrival at the police station, before his arrest, by the officer who transported defendant to the station. Defendant testified that he stated he would like to have a lawyer, explaining that he had been arrested a few times before and knew he wanted a lawyer. Defendant further testified that the arresting officer then told defendant that if he wanted to "play hard ball" he was going to jail. Defendant was then transported to the Montgomery County jail. Defendant stated that he asked for an attorney more than once but was told that he would get an attorney on Monday when he went to court for his first appearance. Defendant said that he was not allowed to telephone an attorney, but if he had been allowed to do so, he would have called the public defender that was representing him at that time on another pending charge.

While in jail over the weekend, before his first appearance and before talking to an attorney, two men were placed into the cell with defendant. Defendant thought that both men were under arrest, just as he was. Defendant knew one of the men, Donald Charlton, from a prior prison sentence, during which he became acquainted with Charlton. The other man, John Parisi, who went by the pseudonym of Vito Bianco in jail, appeared to be a biker. Defendant testified that Charlton and Parisi had initiated the conversation with him, that he told them stories he had heard in prison to impress them, and that he did not realize that he was talking to anyone who would seek to use his statements against him.

On Monday, when defendant was taken to the courthouse on his first appearance for the aggravated battery charge, he was arrested on the murder charge, based upon the incriminating statements he had made to Charlton and Parisi. Defendant did not know that Parisi was an undercover government agent until this time. Immediately upon his arrest for murder, defendant again asserted that he wanted a lawyer, but defendant stated that the arresting officers continued to try to question him with no lawyer present. Defendant did not make any statement to the officers who arrested him on the murder charge. On cross-examination, defendant was impeached with a long history of criminal involvement.

After defendant's testimony, the hearing was continued to allow the State to notify its witnesses. When the motion came on for hearing again, five officers testified for the State, three of whom had had very little contact with defendant as a result of his arrest for aggravated battery and did not report having any conversations with him. Officer Jerry Cahill, of the Litchfield police department, testified that on the morning of March 30, 1986, he interviewed the victim of a fight at the hospital and then arranged the visit to the trailer where defendant was known to be staying. Cahill asked defendant to come to the police station to answer some questions, and defendant did so voluntarily. While another officer transported defendant to the station, Cahill conducted the search of the girl friend's trailer and then went back to the station and told defendant that he was under arrest. Cahill did not give defendant his *Miranda* warnings at the time of his arrest but had previously instructed the officer who transported defendant to the station to do so "in case he would say something." After defendant was placed under arrest, he stayed at the police station for about 15 to 20 minutes waiting for the jail officials to pick him up and take him to jail, during which time defendant's girl friend and mother came in and talked to him.

Cahill testified that from the time he first saw defendant that morning at the trailer until the time he left to go to the jail, a total of about 30 minutes, defendant did not, in his presence, request an attorney. Additionally, although Cahill had arrested defendant previously some 5 to 10 times, he never heard defendant request an attorney in the past. On cross-examination, Cahill stated that he had originally intended to question defendant after he got back to the station, but he did not do so because he had already located the gun believed to be used in the aggravated battery and had interviewed witnesses, so that there was no longer any need to question defendant. Further, in his past experience with defendant, he had never known him to talk or give any information to law enforcement officials, and as far as he could remember, defendant had not asked for an attorney in any prior arrest. Cahill admitted that he could not remember what the prior charges or circumstances of arrest were. Because defendant had been charged with aggravated battery, he was not entitled to have bond set until his first appearance on Monday after the Saturday arrest, so that defendant did not have any choice but to stay in jail over the weekend.

Jeff Davis, the Litchfield police officer who transported defendant from the trailer to the police station, testified that, at the station, he advised defendant of his *Miranda* rights, and defendant stated that

he understood his rights. Davis could not recall specifically if defendant had requested an attorney during the time he was in defendant's presence, approximately 30 to 45 minutes. Davis stated that although he did not recall defendant asking for an attorney, his customary practice was to make a report for any suspect who had done something unusual, such as request an attorney, and that he had not made any report concerning his contact with defendant.

■ We will first consider the State's argument that the trial court's finding that defendant had invoked his right to an attorney is against the manifest weight of the evidence. As the trier of fact in a suppression hearing, the function of the trial judge is to determine the credibility of the witnesses, the weight to be given their testimonies, and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) If evidence is merely conflicting, a court of review should not substitute its judgment for that of the trial judge. (*People v. Spivey* (1991), 209 Ill. App. 3d 584, 568 N.E.2d 327.) The trial judge's decision on a suppression motion should not be overturned unless manifestly erroneous. *People v. Sullivan* (1991), 209 Ill. App. 3d 1096, 568 N.E.2d 447.

Based upon the record in this case, we are not prepared to say that the trial court's finding that defendant had invoked his right to counsel was manifestly erroneous. To do so would be to substitute our judgment for his, which we decline to do, since the evidence upon which the decision was made was conflicting. While Officer Cahill testified that defendant did not assert his right to counsel, Officer Davis could not remember. Defendant testified unequivocally that he had asserted his right to counsel. As defendant pointed out in oral argument, to make a finding that the trial judge was manifestly erroneous on this issue of fact would amount to a finding that the defendant is inherently unbelievable, something we cannot do from the reading of a record on appeal alone. Furthermore, as the State has pointed out more than once, defendant was thoroughly impeached on cross-examination. Contrary to the State's argument, we do not feel that the impeachment gives us the right to take the decision out of the hands of the trial judge, but we feel, instead, that the trial judge considered this evidence in making his decision and found in favor of defendant anyway. Thus, we hold that the trial court's finding that defendant had asserted his right to counsel was not against the manifest weight of the evidence.

■ Upholding the trial judge's determination that defendant had asserted his right to counsel brings us to the crux of this case: Where a suspect has asserted his fifth amendment right to counsel, can he be

questioned by undercover agents on a separate, unrelated, and uncharged offense while in jail, without the presence of an attorney, and without an opportunity to waive his right to counsel? We feel that the actions of the undercover agents in this case violated defendant's fifth amendment right to counsel, and therefore, we affirm the trial court's order granting defendant's motion to suppress.

The *Miranda* decision (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) sets forth the applicable fifth amendment guarantees. If a suspect in custody "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no [further] questioning." (*Miranda*, 384 U.S. at 444-45, 16 L. Ed. 2d at 707, 86 S. Ct. at 1612.) The *Miranda* decision was primarily concerned with typical incommunicado interrogation of individuals in a police-dominated atmosphere and the resulting self-incriminating statements made without a full warning of the individual's constitutional right to remain silent. However, the Court did not limit its holding to high-pressure interrogation-room questioning only but went further to find that the privilege against self-incrimination "has always been 'as broad as the mischief against which it seeks to guard.' " (*Miranda*, 384 U.S. at 459-60, 16 L. Ed. 2d at 715, 86 S. Ct. at 1620, quoting *Counselman v. Hitchcock* (1892), 142 U.S. 547, 562, 35 L. Ed. 1110, 1114, 12 S. Ct. 195, 198.) For a self-incriminating statement of a defendant in custody to be upheld, it must be voluntarily made, and it will not be considered voluntary if it would not have been made *but for* improper influences of the law enforcement officials. *Miranda*, 384 U.S. at 462, 16 L. Ed. 2d at 716, 86 S. Ct. at 1621, citing *Bram v. United States* (1897), 168 U.S. 532, 42 L. Ed. 568, 18 S. Ct. 183.

*Miranda* establishes that a person has a fifth amendment right to have an attorney present during any official questioning, if he so desires, and requires that the officials cease questioning a suspect immediately upon a request for an attorney. If the questioning continues after a suspect has requested an attorney, but without the attorney's presence, then a heavy burden is on the government to show that the suspect knowingly and intelligently waived his right to counsel. Further, although any statement given freely and voluntarily without any compelling influences is admissible in evidence, "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda*, 384 U.S. at 476, 16 L. Ed. 2d at 725, 86 S. Ct. at 1629.

Later Supreme Court cases have provided more guidance on the issue of a defendant's fifth amendment privilege against self-incrimination. "It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" (*Edwards v. Arizona* (1981), 451 U.S. 477, 482, 68 L. Ed. 2d 378, 385, 101 S. Ct. 1880, 1884, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023.) Initially, then, in the particular facts of our case, the government's procedure was calculated to deceive defendant, so that he would not know to whom he was making incriminating statements. Therefore, we do not find that defendant was given an opportunity to knowingly and intelligently waive his previously asserted right to have counsel present during questioning.

*Edwards* holds:

> "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, *** having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." (*Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1884-85.)

We cannot say that defendant initiated the conversation with the undercover agents in this case because they concocted the elaborate scheme that put them into contact with defendant, and they first began talking to defendant and asked the question that began the incriminating statements: "Have your ever done anyone?" Additionally, even if defendant had sought out the undercover agents first, and even if he had begun the conversation that led to his incriminating statements, he could not have known that he was talking to the "authorities." Rather, he merely "responded to further police-initiated custodial interrogation" (*Edwards*, 451 U.S. at 484, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885), and a valid waiver cannot be found under those facts.

However, the custodial interrogation to which *Edwards* applied was regarding the same offense for which the defendant in that case

was in custody. A factual situation more closely related to the case *sub judice* is *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093, wherein the Court held that the police cannot initiate interrogation of a suspect on a second, unrelated offense if the suspect does not have an attorney present, if he has previously requested an attorney for the first offense. The Court goes on to state that the fifth amendment privilege against self-incrimination, as opposed to the sixth amendment right to counsel, which does not attach until the suspect has been formally charged with a specific crime, is protected by having an attorney present to "counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges." *Arizona v. Roberson*, 486 U.S. at 685, 100 L. Ed. 2d at 716, 108 S. Ct. at 2100.

Therefore, it is obvious that defendant's sixth amendment right to counsel had not attached regarding the murder charge for which the undercover agents engaged him in conversation, but that his fifth amendment privilege against self-incrimination had attached, since the trial court found, and we cannot disagree, that defendant had asserted his fifth amendment rights prior to the undercover questioning. "Whether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second investigation, the same need to determine whether the suspect has requested counsel exists." *Arizona v. Roberson*, 486 U.S. at 687-88, 100 L. Ed. 2d at 717, 108 S. Ct. at 2101.

A final issue in our analysis of this case is whether the conduct of the undercover agents amounted to interrogation, for if it did not, then defendant's fifth amendment privilege would not have been violated. In considering this issue, *Arizona v. Roberson* points to *Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682, for instruction regarding the nature of interrogation. *Innis* considered a factual scenario wherein the defendant was under arrest for murder and was being transported in a squad car to the police station. He had been advised of his *Miranda* rights, and he had requested an attorney. On the way to the police station, the two transporting officers engaged in a conversation with each other about a gun that was missing from the murder scene and how terrible it would be if one of the children from the school for handicapped children nearby found the gun and was hurt. The defendant immediately

told the officers to turn the car around so that he could take them to the gun. He then led them to the spot where the gun was hidden.

The Supreme Court upheld the trial court's denial of the defendant's motion to suppress even though the Court found that the defendant was in custody at the time the incriminating statements were made and had invoked his right to counsel. The issue in the case was whether the defendant had been interrogated by the officers in violation of his fifth amendment right to remain silent until he had consulted with a lawyer. The Court specifically stated that it did not reach the question of whether he had waived his right to counsel, since it found that the officers' conversation with each other did not amount to interrogation. In ruling that the defendant had not been interrogated under the particular facts of that case, the Court in *Innis* declined to limit the *Miranda* decision to direct questioning but held instead that it applies as well to other, less direct techniques of persuasion. "To limit the ambit of *Miranda* to express questioning would 'place a premium on the ingenuity of the police to devise methods of indirect interrogation, rather than to implement the plain mandate of *Miranda*.' " (*Innis*, 446 U.S. at 299 n.3, 64 L. Ed. 2d at 307 n.3, 100 S. Ct. at 1689 n.3, quoting *Commonwealth v. Hamilton* (1971), 445 Pa. 292, 297, 285 A.2d 172, 175.) The Court ruled that anytime a person is in custody, if he is subjected to express questioning or its functional equivalent, the *Miranda* safeguards are in place, and any "practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." *Innis*, 446 U.S. at 301, 64 L. Ed. 2d at 308, 100 S. Ct. at 1690.

The authorities in the case *sub judice* knew or should have known that the ruse they played on defendant was reasonably likely to evoke an incriminating response from him. Since defendant had invoked his right to counsel, the actions of the authorities amounted to the functional equivalent of direct questioning and violated the Supreme Court rulings construing the fifth amendment privilege against self-incrimination. Clearly, defendant would not have made the incriminating statements to the undercover agents "but for" the elaborate scheme engaged in by the agents. Because defendant had invoked his right to counsel, the actions of the authorities were improper and the statements made by defendant must be suppressed. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) That is not to say that the authorities could not have played out the same scam on defendant if he had not been in custody, because it seems clear that they could have done so without violating defendant's constitutional rights. (See *Hoffa v. United States* (1966), 385 U.S. 293, 17 L. Ed. 2d

374, 87 S. Ct. 408 (wherein Hoffa was on trial for one offense, but not in custody, and the Court determined that Hoffa's fifth amendment privilege against self-incrimination had not been violated by placement of an undercover informant in his hotel room during trial and that the statements obtained could be used against him in a second, unrelated trial).) For all of the reasons stated, we affirm the trial court's order granting defendant's motion to suppress.

Affirmed.

GOLDENHERSH and MAAG, JJ., concur.