THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN L. NASH *et al.*, Defendants-Appellants.

Third District    Nos. 3—95—0303, 3—95—0304 cons.

Opinion filed July 26, 1996.

HOLDRIDGE, P.J., dissenting.

Robert L. Metzler (argued), of Pekin, for appellants.

Marc Bernabei, State's Attorney, of Princeton (John X. Breslin and Rob-

ert M. Hansen (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendants Kevin L. Nash and Charles H. Calkins were charged in separate complaints with violating section 5(b) of the Timber Buyers Licensing Act (225 ILCS 735/5(b) (West 1992)), in that they knowingly appropriated the timber of Dianne Meyers without her consent. The cases were consolidated and a bench trial was held on January 25, 1995. The defendants were convicted and sentenced to 14 days' incarceration. We reverse.

## I. FACTS

At trial, the prosecution called as its first witness Tyra Johnson, the daughter of Dianne Meyers. Johnson testified that in the fall of 1993, the previous owner of the real estate, Peter Reviglio, and defendant Charles Calkins came to Meyers' property and spoke with Meyers, Johnson and her brother Trent Thomas. Calkins requested and received permission to walk through Meyers' property to get to the location where they were cutting a neighbor's trees. Johnson testified that she and her brother offered the men a copy of a survey, but this offer was declined. She did not tell Calkins and Reviglio that Meyers claimed land on the other side of the fence.

According to Johnson, Dianne Meyers later telephoned Calkins to confront him because trees had been cut on her property. Calkins came to Meyers' home and offered to pay $100, but Meyers refused. Calkins then offered $200, which was also refused. Later, Johnson and her brother had a long conversation with Calkins, who said he had made an honest mistake. Johnson testified that five large oak trees were cut on Meyers' property.

Trent Thomas testified that he told Reviglio and Calkins that the fence line was not the property line. Thomas stated that there were property stakes, and one of the stakes was next to a wooden stake with a bright orange flag on it. Thomas offered Reviglio and Calkins a map, but they declined the offer. After Meyers' trees were cut down, Calkins claimed that it was mistake and that the trees were diseased. Thomas had not seen any signs of disease on the trees.

On cross-examination, Thomas testified that the adjoining neighbor is Joanne Westphal. He never told Westphal that Meyers claimed 77 feet on the other side of the fence because this was on the plat and thus was public knowledge.

Joanne Westphal testified that she signed a deed selling timber on her property to Quality Wood, Inc. Westphal, who was paid $2,500, told Calkins that she owned the property up to the fence line. West-

phal stated that until this incident she was unaware that Dianne Meyers claimed 77 feet of land on Westphal's side of the fence.

The prosecution's final witness was Mark Walczynski, a conservation police officer assigned to investigate the case. Walczynski testified that five trees were cut on Meyers' property and the stumps did not appear to be diseased. He also stated that Kevin Nash was the license holder for Quality Wood, Inc., and Gregory Nash is the company's authorized agent.

The defense called Alfred Hueneburg, who surveyed the land in 1985. Hueneburg stated that the standing fence line did not correspond with the property line. Meyers' property extends 77 feet beyond the fence. Hueneburg testified that he had marked the southern point of the property line with an iron bar that sticks above the ground by five or six inches, and the northern point with a railroad spike in the center line of the roadway. This spike was flush with the road surface. Hueneburg said he marked these two points with paint or ribbons, but he was sure the markers had been destroyed in the interim.

Hueneburg testified that the 77-foot strip had been conveyed to Meyers in a separate quitclaim deed. Without measuring the property itself, a person could not determine the location of the property line just from looking at documents in the recorder's office.

Defendant Charles Calkins testified that he was a timber scout for Quality Wood, Inc. In August 1993, he was driving past the property when saw some trees that interested him. He then called Joanne Westphal and entered into negotiations. Gregory Nash actually signed the contract with Westphal.

Calkins testified that Westphal told him that her property went all the way to the fence. Calkins denied that he had any conversation with Dianne Meyers or Trent Thomas about Meyers owning land on Westphal's side of the fence. Calkins claimed that he first learned about the disputed 77-foot strip when Dianne Meyers called him, after the trees were cut.

On cross-examination, Calkins testified that prior to the trees being cut, he went to the recorder's office and looked at Westphal's deed. It indicated that Joanne Westphal owned 80 acres.

Defendant Kevin Nash testified that before he cut down the trees, he spoke only with Charles Calkins regarding the location of the boundary. Calkins said that the fence was the property line. Nobody mentioned the 77-foot strip until after the trees had been cut. Nash testified that he did not see any boundary stakes, just the fence.

The prosecution and the defense presented two stipulations to the court. First, if called to testify, Peter Reviglio would state that in

August of 1993, Calkins and he asked Trent Thomas for permission to go onto Meyers' property, and permission was given. Reviglio told Calkins that the fence was the property line. Second, if called to testify, Dianne Meyers would testify that neither Calkins nor Nash had permission to cut any trees on her property.

The court found the defendants guilty.

## II. ANALYSIS

On appeal, the defendants' primary contention is that the State failed to prove its case beyond a reasonable doubt. When faced with a challenge to the sufficiency of the evidence, the relevant inquiry for a court of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). This court will not substitute its judgment for that of the trier of fact on questions involving the weight to be assigned evidence or the credibility of witnesses. *People v. Campbell*, 146 Ill. 2d 363, 375, 586 N.E.2d 1261, 1266 (1992). We will not disturb a conviction unless the evidence presented at trial is "so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Campbell*, 146 Ill. 2d at 375, 586 N.E.2d at 1266.

■ Section 5 of the Timber Buyers Licensing Act states that it is unlawful for any timber buyer to knowingly and willfully cut or appropriate any timber without the consent of the timber grower. 225 ILCS 735/5 (West 1992). By its very nature, "knowledge" is ordinarily proven by circumstantial evidence rather than by direct evidence. *People v. Weiss*, 263 Ill. App. 3d 725, 731, 635 N.E.2d 635, 639 (1994). "The State must present sufficient evidence from which an inference of knowledge can be made, and any inference must be based upon established facts and not pyramided on intervening inferences." *Weiss*, 263 Ill. App. 3d at 731, 635 N.E.2d at 639. Where a statute establishes knowledge as the mental state for a particular offense, a mistake of fact constitutes a valid defense if that mistake negates the requisite knowledge. See 720 ILCS 5/4—8(a) (West 1992); *People v. Crane*, 145 Ill. 2d 520, 527, 585 N.E.2d 99, 102 (1991).

■ A person acts knowingly or with knowledge when he is "consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists." 720 ILCS 5/4—5(a) (West 1992). "Substantial" is defined as "having a solid or firm foundation: soundly based: carrying weight" (Webster's Third New International Dictionary 2280 (1976)), and "probability" is defined as

"[l]ikelihood; appearance of reality or truth" (Black's Law Dictionary 1081 (5th ed. 1979)). In contrast, a "possibility" is merely an "uncertain thing which may happen." Black's Law Dictionary 1049 (5th ed. 1979). Here, the State was required to prove that the defendants were consciously aware that they were cutting Diane Meyers' trees or that this was a substantial probability.

During closing argument, the prosecutor argued that "knowledge in this case means knew or should have known." The trial judge explicitly applied this standard to the issues of the defendants' knowledge of boundary location and tree ownership:

"[W]ith what is involved in this case there are obligations this court believes to go further to be sure that when you're taking timber you're doing it in the right spot \*\*\*. I guess one thing that's controlling on the *known or should have known* [issue] is the testimony that the surveyor's markers were there \*\*\* there was a post there with an orange flag on it. *Now whether these men saw it or not, I have no way of knowing, but it seems to me reasonable that they should have seen it* if they were surveying the land closely enough to make the kinds of decisions you have to make \*\*\*." (Emphasis added.)

The trial judge applied the wrong standard and the State failed to meet its burden of proof.

■ The term "knew or should have known" is commonly used in civil cases; however, it should not be equated with the requisite mental state of "knowledge" in criminal prosecutions. "Knowledge" is not the same as "should have known." "Knowledge" involves conscious awareness (720 ILCS 5/4—5 (West 1992)), while "should have known" implicates "the standard of care which a reasonable person would exercise" and therefore pertains to the lesser mental states of "recklessness" and "negligence" (720 ILCS 5/4—6, 4—7 (West 1992); *People v. Higgins*, 86 Ill. App. 2d 202, 207, 229 N.E.2d 161, 163 (1967)).[1]

■ Applying the correct statutory definition of "knowledge" and

---

[1]In certain circumstances, the "knew or should have known" standard may be applied in criminal cases; however, none of these situations applies here. A court may consider what a defendant "should have known" where:

(1) the requisite mental state is less than that of knowledge, such as recklessness or negligence (see 720 ILCS 5/4—6, 4—7 (West 1992); *People v. Whiters*, 204 Ill. App. 3d 334, 339, 562 N.E.2d 325, 328 (1990); *People v. Wilson*, 196 Ill. App. 3d 694, 701, 554 N.E.2d 354, 359 (1990));

(2) the statute expressly uses "should know" or "should have known" language (*People v. Smith*, 258 Ill. App. 3d 633, 637, 629 N.E.2d 598, 601 (1994); *People v. Halmon*, 225 Ill. App. 3d 259, 279, 587 N.E.2d 1182, 1195 (1992));

reviewing the evidence in the light most favorable to the prosecution, the testimony of Trent Thomas and Joanne Westphal established that the defendants knew that a conflict existed as to the location of the boundary. In the absence of additional evidence, however, knowledge of this dispute merely gave rise to an awareness of the *possibility* that the trees belonged to Dianne Meyers rather than the *substantial probability* of this fact. While the defendants may have been obliged to investigate further before cutting, their failure to do so is an issue of civil liability rather than criminal culpability based upon knowledge. The trier of fact's statement that he had "no way of knowing" whether the defendants saw the boundary marker confirmed that the State failed to meet its burden of proof on requisite element of defendants' knowledge.

 

---

(3) the defendant is charged with contempt of court (*People v. Ziporyn*, 121 Ill. App. 3d 1051, 1057, 460 N.E.2d 385, 390 (1984); *People v. Halprin*, 119 Ill. App. 3d 922, 928, 457 N.E.2d 1010, 1014 (1983));

(4) the defendant is accused of neglecting his or her common law duty as a parent (*People v. Stanciel*, 153 Ill. 2d 218, 236-37, 606 N.E.2d 1201, 1211 (1992)); and

(5) following a conviction, when determining the applicability of certain factors in aggravation at sentencing (*People v. Pasch*, 152 Ill. 2d 133, 215, 604 N.E.2d 294, 329 (1992); *People v. Calva*, 256 Ill. App. 3d 865, 877, 628 N.E.2d 856, 865 (1993)).

The "knew or should have known" standard may also be applied to others participating in a criminal case, such as police officers and attorneys, when determining the propriety of their actions. See *People v. Perkins*, 248 Ill. App. 3d 762, 771, 618 N.E.2d 1275, 1282 (1993) (investigating authorities knew or should have known that "the ruse they played on defendant" was likely to evoke an incriminating response after defendant had invoked right to counsel); *People v. Sanchez*, 191 Ill. App. 3d 1099, 1104, 548 N.E.2d 513, 516-17 (1989) (police knew or should have known that building searched was different from the address on warrant); *People v. Lee*, 185 Ill. App. 3d 420, 444, 541 N.E.2d 747, 761 (1989) (defense counsel failed to make an adequate opening statement; in light of prior trial, counsel knew or should have known what the evidence would be).

In none of the foregoing situations does the application of the "should have known" standard alter the definition of "knowledge" in section 4—5 of the Criminal Code. 720 ILCS 5/4—5 (West 1992).

## III. CONCLUSION

The judgment of the circuit court of Bureau County is reversed.

Reversed.

SLATER, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent from the majority's reversal of the defendants' convictions. The defendants were charged with *knowingly* cutting timber without the consent of the timber grower. (Emphasis added.) 225 ILCS Ann. 735/5 (Michie 1995). Knowledge generally refers to an awareness of the existence of facts which make an individual's conduct unlawful. *People v. Gean*, 143 Ill. 2d 281, 288 (1991). I disagree with the majority's finding that the People failed to prove that the defendants knowingly acted in an unlawful manner.

When challenged with a claim of insufficiency of evidence, it is the function of the reviewing court to examine the evidence in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). This standard applies to all criminal cases regardless of the nature of the evidence (*People v. Schott*, 145 Ill. 2d 188, 203 (1991)), and a criminal conviction will not be overturned on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. *Collins*, 106 Ill. 2d at 261.

As the majority points out, knowledge is ordinarily established by circumstantial evidence, and there must be sufficient evidence from which an inference of knowledge can be made. *People v. Weiss*, 263 Ill. App. 3d 725 (1994). I believe, however, that a review of the record under the *Collins* standard shows sufficient evidence from which a rational trier of fact could have properly inferred that the defendants knew their conduct was unlawful.

The evidence established that the defendants cut down five trees. The five trees were located on a strip of land that extended 77 feet west of a fenceline. Two of the trees were located within close proximity to the fence, two were approximately 50 feet west of the fence, and the fifth tree was approximately 75 feet west of the fence. The 77-foot strip of land upon which the trees were growing was titled, by recorded quitclaim deed, to Dianne Meyers.

Trent Thomas, Meyers' son, testified that approximately one week prior to the trees being cut down, he told Calkins and Peter Reviglio

that the fenceline was not the property line. He testified that he told them that his mother's property extended west of the fenceline although he did not state how far west of the fenceline her property extended.

Thomas also testified that he told them that there were stakes marking the true boundary line. He told Calkins that the property had recently been surveyed and he offered Calkins and Reviglio a survey map, but they would not take the map. Thomas also testified that there in fact were survey markers west of the fenceline showing where the actual property line was located. Thomas' sister, Tyra Johnson, corroborated most of her brother's testimony.

Calkins denied being told by Thomas that his mother owned the land west of the fenceline and denied being offered a survey map by Thomas. The parties stipulated that Reviglio, if called to testify, would have corroborated Calkins' testimony.

I believe that a rationale trier of fact could have concluded beyond a reasonable doubt that the defendants knew that the trees they cut were on land owned by Diane Meyers. The People established that the true boundary was marked west of the fenceline and that the defendants cut the trees east of that line. The People also established, through the testimony of Thomas and Johnson, that Calkins was told that Meyers' property extended beyond the fenceline and was offered a survey map to prove it.

When viewing these facts in the light most favorable to the People, a rational trier of fact could properly infer from these facts that the defendants knowingly cut timber without the permission of the timber grower. As that is the standard of review, I believe that the convictions should be affirmed.

Like the majority, I am troubled by the trial court's statements after the verdict was rendered. The majority seems to hold that the trial court's statement that the defendants *should have known* the survey stakes were present is inconsistent with a finding of guilt beyond a reasonable doubt and, therefore, the People failed to prove the defendants guilty by the appropriate standard. I would not agree.

In order to reverse a conviction based upon statements made by a judge after the verdict has been rendered, the statements and actions of the judge must establish a legal uncertainty as to whether the defendant was guilty beyond a reasonable doubt. *People v. Olson*, 3 Ill. App. 3d 240, 244 (1971). In *Olson*, the trial court, having found the defendant guilty following a bench trial, stated on three separate occasions at the sentencing hearing that "he did not know whether defendant was the perpetrator of the crime." 3 Ill. App. 3d at 244. In reversing the conviction, the appellate court noted that the contra-

dicted testimony of the victim, the defendant's plausible alibi witnesses, "along with the statements and actions of the trial judge," led to the conclusion that "the proof of guilt was so unsatisfactory as to justify a reasonable doubt of guilt." 3 Ill. App. 3d at 245.

In the matter *sub judice*, the trial court used the term "should have known" when it discussed whether the defendants had knowledge of one specific fact, *i.e.*, whether they actually saw the survey stakes. I do not believe that this statement expresses sufficient doubt as to the element of knowledge necessary to reverse a conviction. See also *People v. Denton*, 256 Ill. App. 3d 403, 409-10 (1993) (appellate court found the trier of fact had reasonable doubt about an *element* of the offense and reversed the conviction where the trial court stated that it had doubts as to whether the defendant had the intent to kill or do great bodily harm, yet convicted the defendant of intentional murder).

I believe that in this matter the trial court was merely careless in the use of legal terminology, and I do not believe that the careless turn of a phrase is sufficient to overcome a proper review of the evidence under the *Collins* standard. I would therefore affirm the trial court's finding of guilt.