2021 IL App (2d) 190764-U
No. 2-19-0764
Order filed March 5, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-905 |
| ARTAVEUS S. LOWE, | ) ) ) | Honorable Robert A. Wilbrandt Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The evidence showed that defendant was aware of a substantial probability that a festival he attended was held in a public park, and therefore he was properly convicted of unlawful presence of a child sex offender in a public park. The State presented evidence that, on the day of the festival, (1) the park entrance had a large, clearly visible sign declaring that it was a city park, and (2) the area had other features of a public park. The trial court properly credited this evidence over contrary evidence presented by defendant.

¶ 2    Defendant, Artaveus S. Lowe, appeals his conviction of unlawful presence of a child sex

offender in a public park (720 ILCS 5/11-9.4-1(b) (West 2016)).  He contends that the State failed

to prove him guilty beyond a reasonable doubt because there was insufficient evidence that he knew that he was in a public park. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant, a convicted child sex offender, was indicted based on the allegation that, on September 2, 2017, he was knowingly present in Milky Way Park, a public park in Harvard, Illinois. The indictment further alleged that defendant had previously been convicted of unlawful presence of a child sex offender in a public park in 2010. In July 2019, a bench trial was held.

¶ 5    Detective Verle Leard of the Harvard Police Department testified that he was assigned to work at the Harvard Balloon Festival at Milky Way Park on September 2, 2017, from 2:00 p.m. to 10:00 p.m. The park was public, with an address of 300 Lawrence Road in Harvard. Leard described the park as a large grassy area with baseball and soccer fields, playgrounds, and a couple of pole barns. The balloon festival was held across the entire park and included bouncy houses and a couple of carnival rides. On the side of the park with the balloons were food and craft vendors. At around 3:00 p.m. on September 2, 2017, there were thousands of people at the festival ranging in age from children to adults.

¶ 6    Leard testified that there were two entrances to the Milky Way Park. The main entrance was off Lawrence Road. There was also a smaller entrance off Ratzlaff Street. Leard was shown a photo, which he identified as a photo he took in March 2019 of the park sign at the Lawrence Road entrance. Leard testified that the photo accurately depicted what the sign looked like on September 2, 2017. The photo was admitted into evidence. The photo depicts a wide column crossed with a horizontal sign. On the sign is written "Milky Way Park," and on the column is written, "City of Harvard" and "300 Lawrence Road" (the street address). A police officer stands

next to the sign for scale.  Leard testified that the officer was five foot, seven inches tall.  We note that the sign is at least half again as tall as the officer.

¶ 7     Leard was shown another photo, which he identified as a photo he took in March 2019 of the park sign at the Ratzlaff Street entrance.  Leard testified that the photo accurately depicted what the sign looked like on September 2, 2017.  The photo was admitted into evidence.  The sign in the photo states "City of Harvard" and "Milky Way Park" and contains a directional arrow.  Leard testified that the sign at the Ratzlaff Street entrance is two-sided but smaller than the sign at the Lawrence Road entrance.

¶ 8     On September 2, 2017, at about 3:15 p.m., Leard was called by Officer Todd Oczus to meet with him about a disturbance in a parking lot in the center of the park.  Leard described the parking lot as an overflow lot between the two entrances.  He said that "[a]s you pull into the park on Lawrence Road, there's a large paved area.  But then when that gets full, it goes into a gravel area which is still for parking."  When Leard arrived, he spoke with defendant and learned that he was a registered sex offender.  Defendant said that he knew that he was not supposed to be in a park but that he did not know that the festival was being held in a park.  When asked which entrance he used to enter the festival, defendant pointed to the main entrance at Lawrence Road.  He offered no explanation for not knowing that the location was a park.  Leard told defendant that he would deal with the matter later and advised defendant to leave.  Defendant and his family then got into their car and left via the main entrance on Lawrence Road.

¶ 9     Leard later learned that defendant was previously convicted of unlawful presence of a child sex offender in a park.  (Documentation of defendant's conviction was entered into evidence without objection.)  Leard then conferred with the State's Attorney's Office about charging defendant with a felony instead of a misdemeanor.

¶ 10    On cross-examination, Leard agreed that the sign at the Lawrence Road entrance was one-sided and angled such that its front was not visible as one approached the park on Lawrence Road from the south.  (We note from the photo, however, that the front of the sign would be very conspicuous once one reaches the park entrance on Lawrence Road.)  Leard acknowledged that the park sign at the Ratzlaff Street entrance was "relatively small," though two-sided.  Leard agreed that the park looked different during the festival than on a normal day.  He did not recall if on the day of the festival the Lawrence Road entrance had signage about parking, but he was sure that the park sign at that entrance was not obstructed that day.

¶ 11    Officer Oczus testified that he was working at the balloon festival on September 2, 2017, when he responded to a report of people arguing.  Oczus spoke to the people involved, including defendant.  Oczus testified that he considered Milky Way Park a public park.  He provided a general description of the park consistent with Leard's.

¶ 12    At the end of the State's case, defendant moved for a directed verdict, arguing that the State failed to prove that he was knowingly in a public park.  That motion was denied.

¶ 13    Defendant's girlfriend, Melissa Freund, testified for the defense.  She had never been to Harvard before September 2, 2017.  When her mother, Christina Freund, mentioned that taking a hot air balloon ride was "on her bucket list," Melissa began looking for opportunities for such rides.  She learned of the Harvard Balloon Festival on Facebook.  Defendant introduced into evidence an August 30, 2017, screenshot from Melissa's phone of a Facebook advertisement for the balloon festival.  The advertisement did not provide a location but provided a link for the details.  Melissa did not click the link because she "didn't see the need to," as she was going to search for the festival in Google Maps.  She was also concerned that the link could be a virus.  She typed "Harvard Balloon Fest" into Google Maps to find directions to the festival.  Melissa

identified a screenshot of her cell phone showing the map result. The screenshot showed virtual "map pins" for Milky Way Park and the Harvard Balloon Festival. The pins were separated by what appeared to be a road. The State objected to admission of the screenshot. The trial court expressed concern as the map result provided no addresses nor contained a legend or otherwise indicated the distance between the park and the festival. Though the court found that the relevance was "minimal at best," the court overruled the State's objection and allowed the screenshot into evidence. Melissa testified that she wanted to make sure that the balloon festival was a safe place for defendant to do. She stated that, when trying to figure out how to get to the location, she did not find anything that made her believe that the festival was in Milky Way Park.

¶ 14    Melissa, her brother, her two children, Christina, and defendant all went to the balloon festival. Melissa's brother was driving, and she was with defendant in the back seat. Melissa did not know if they approached the park from the north or the south. She did not see a sign that said "Milky Way Park." When Melissa was shown the photo of the sign at the Lawrence Road entrance and was asked if she saw that sign when she and the others approached the park, she replied that the sign was covered with a white sheet that said "[p]arking" and "handicap parking" and showed an arrow. When they pulled into the area, she saw a lot of people, a ticket booth, bouncy houses, and food vendors. "[T]here was something on the other side," but she did not walk to where that was. She did not see playground equipment, baseball diamonds, basketball courts, or football fields. "[F]rom [her] vantage point in the parking lot, items such as the playground equipment were obstructed by other things[.]"

¶ 15    After they arrived, Melissa got into an argument with Christina. The police came and asked Melissa if they knew that the area was a park. She told them "no." The police left to find Christina, who had gone to "the other side," and then the family all got in the car and left. Melissa said that

at no point while she was at the festival did she think that she was in a public park. On cross-examination, she said that she knew that festivals and carnivals were sometimes held in parks but that she had also seen them in parking lots.

¶ 16    Christina testified that she had not previously been to the Harvard Balloon Festival or Milky Way Park. When they arrived at the park, she did not see a sign that read "Milky Way Park" or otherwise indicated that the area was a park. She saw instead "a sign in the front which was covered with a white sign that said parking, handicap." She saw bouncy houses, food trucks, tents, concessions, and a flea market. She did not initially see baseball fields or playground equipment, but she later went to a location where she saw playground equipment. Melissa's children played on the equipment. Defendant was not with them at that time, and the playground equipment could not be seen from where the car was parked because other items were obstructing it from view. Christina admitted that the festival was a public event and that there were some grassy areas and some gravel areas. When asked where she thought the festival was being held if not in a park, she said: "I really thought that—farmers donate property sometimes. Maybe the farmer had a balloon, and he was in this club. I don't know."

¶ 17    Defendant testified that he had not been to Harvard before he went to the balloon festival. When Christina asked about the festival, he agreed to go but wanted to make sure that it was not in a park. Melissa researched the festival, and defendant asked her questions to verify the festival's location. He testified that "[a]nything that we looked at never stated it was a park or anything like that at all." They were under the impression that it was just going to be a balloon ride, and they were not "expecting, like, [a] festival and all this other stuff." When they arrived at the park, defendant did not see a sign for a park. He saw only a sign covered with a sheet with directions about parking and handicap parking. The sign was in the shape of a cross. Defendant did not see

playground equipment. He saw a field of dried corn with an opening cut out for the balloon rides. He also saw concession stands and a flea market on "the other side." He never went to the "other side." He had not been to a festival before. He had been to carnivals, but these were held in private parking lots, such as movie theaters, and not in public parks. Defendant stated that he did not know that the balloon festival was in a park and that he had no intention of going to a park. He was upset to learn that the area was actually a park.

¶ 18    On cross-examination, defendant admitted that he did not ask anyone at the location whether it was a public park. When questioned about his previous conviction of unlawful presence of a child sex offender in a public park, defendant explained that he did not know that it was park then either, that his girlfriend took him there, and that he left when he learned that it was a park.

¶ 19    Officer Oczus testified in rebuttal that, on September 2, 2017, he spent about two hours standing at the intersection by the Lawrence Road entrance directing traffic. He said that the park sign at the Lawrence Road entrance was not covered with a white sheet. There was a separate sign about handicap parking. This sign "was on Lawrence Road before you came up to the entrance" and it was not so large as to obstruct the view of the park sign. According to Oczus, the Facebook advertisement for the festival said that it was at Milky Way Park and supplied the address.

¶ 20    The trial court found defendant guilty. The court noted that the statute required proof that defendant was knowingly in a public park and that, under the statutory definition, "[k]nowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5(a) (West 2016). Thus, the "real issue," the court stated, was "[d]id [defendant] have a substantial probability that he was in a public park?" The court found the State's witnesses credible and the defense witnesses "certainly less so." The court then recited the "issues that the court takes into consideration in determining whether the defendant was aware of a substantial probability that

the place was a park." Specifically, the court found: (1) there were signs at the entrances to the property stating "Milky Way Park" and these signs were not obstructed by white sheets or other signs; (2) large crowds of adults and children were in attendance; (3) the property had rides and bouncy houses; (4) there was playground equipment visible to at least part of defendant's party; and (5) the event was advertised as being sponsored by the City of Harvard. Ultimately, based on the totality of the circumstances, the court stated:

> "would somebody who drives past a sign that says Milky Way Park, pulls into a parking lot where there are hundreds of children and people around, there are children rides around, there's gym equipment around, there's booths around, would somebody have a substantial — would there be a substantial probability that this is in a public place? And I think the answer is yes.
>
>     And I think the defendant knew all of those things."

Defendant's motion for a new trial was denied, and he was sentenced to three years' incarceration. Defendant appeals.

¶ 21                                  II. ANALYSIS

¶ 22    Defendant contends that the State failed to prove him guilty beyond a reasonable doubt. Specifically, he argues that the evidence did not establish that he knew that he was in a public park.

¶ 23    When a criminal defendant challenges the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court

ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000). A reviewing court will not retry the defendant nor "substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses." *People v. Jackson*, 2020 IL 124112, ¶ 64. A reviewing court will not overturn a conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.* Furthermore, even when the defendant provides uncontradicted testimony, "the trier of fact is not obligated to accept all or any part of that testimony, but may assess the probabilities, the reasonableness of any defense offered and reject any or all of defendant's account in favor of the State's circumstantial evidence of guilt." *People v. Hendricks*, 253 Ill. App. 3d 79, 90 (1993).

¶ 24    To prove defendant guilty, the State was required to establish that defendant was knowingly present in any public park building or on real property comprising any public park. 720 ILCS 5/11-9.4-1(b) (West 2016).

"A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists."

(b) The result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5 (West 2016).

¶ 25    "Knowledge, as an element of a criminal offense, is a question of fact for the trier of fact to decide." *People v. Monteleone*, 2018 IL App (2d) 170150, ¶ 26. "Direct proof of a defendant's

knowledge is unnecessary, and a defendant's knowledge can be inferred from the surrounding facts and circumstances." *Id.* " 'Knowledge may be, and ordinarily is, proven circumstantially.' " *Id.* (quoting *People v. Ortiz*, 196 Ill. 2d 236, 260 (2001)).

¶ 26    Here, defendant denied knowing that the festival was held in a public park and contended that the sign to the park was covered with a sheet providing parking directions. Defendant's testimony as to the shape of the sign was consistent with his statement to Leard that he entered the park off Lawrence Road. The State's evidence contradicted defendant's description of the sign at the Lawrence Road entrance. Oczus testified that, during the two hours he worked near the Lawrence Road sign on September 2, 2017, that sign was neither covered with a sheet nor obstructed by a nearby sign that provided directions to handicap parking. Besides a large and unobstructed sign declaring it so, there were other indicia that the area was a public park, such as that the festival was advertised as being sponsored by the City of Harvard, large crowds of adults and children were in attendance, and the area had grassy areas and amusements for children. The trial court specifically credited the State's witnesses over the defense witnesses. We will not disturb that credibility assessment. Thus, we conclude that a rational trier of fact could find that the State proved beyond a reasonable doubt that defendant was aware of a substantial probability that the festival was in a public park.

¶ 27    Defendant contends, however, that the trial court applied the wrong legal standard to the element of knowledge. He argues that, by stating that "there [was] a substantial probability that [the festival was] in a public place," the trial court improperly focused on what defendant should have known instead of what he actually knew. See *People v. Nash*, 282 Ill. App. 3d 982, 986 (1996) ("knew or should have known" is the improper standard for judging knowledge in a criminal case). We disagree. "In a bench trial, such as this, a trial judge is presumed to know the

law and to follow it, and this presumption is rebutted only when the record affirmatively shows otherwise." *People v. Ressa*, 2019 IL App (2d) 170439, ¶ 31. The court's analysis as a whole shows that it applied the proper standard. The court quoted verbatim from the statute: "[k]nowledge of a material fact includes awareness of the substantial probability that the fact exists" (720 ILCS 5/4-5(a) (West 2016)). The court then proceeded to list facts that it believed were relevant to whether "the defendant was *aware* of a substantial probability that the place was a park." (Emphasis added). In the portion of its analysis where defendant claims the court strayed from the proper standard, the court concluded from the facts it cited that "there [was] a substantial probability that [the festival was] in a public place." However, the court then immediately tied in the issue of defendant's knowledge by remarking that defendant "knew all of these things," namely the facts giving rise to the "substantial probability" that the court found. Thus, the court applied the proper standard in finding defendant guilty beyond a reasonable doubt.

¶ 28                                III. CONCLUSION

¶ 29    The evidence was sufficient to find defendant guilty beyond a reasonable doubt. Accordingly, the judgment of the circuit court of McHenry County is affirmed.

¶ 30    Affirmed.