2021 IL App (2d) 200700-U
No. 2-20-0700
Order filed November 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-70 |
| MARK A. MARTINEZ, | ) ) ) | Honorable Robert A. Wilbrandt Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence supported defendant's convictions of aggravated battery and domestic battery where the victim asked defendant why he was verbally abusing his wife, the victim's daughter, and defendant responded by shoving and kicking the victim, then slamming a door on his finger as he was leaving the room. Particularly, a reasonable jury could find that defendant's actions insulted or provoked the victim and that defendant knew that the victim was at least 60 years old.

¶ 2    Following a jury trial, defendant, Mark A. Martinez, was found guilty of aggravated battery

(720 ILCS 5/12-3(a)(1), 3.05(d)(1) (West 2018)) and domestic battery (*id.* § 12-3.2(a)(2) (West

2018)). He appeals, contending that the State failed to prove him guilty beyond a reasonable doubt. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4    Defendant was indicted on six counts. The State later dismissed two counts, and defendant proceeded to a jury trial on the remaining four counts. Defendant was convicted on count III, which charged aggravated battery, and count V, which charged domestic battery. Both counts alleged that defendant "knowingly made physical contact of an insulting or provoking nature with James F. Papageorge, in that *** defendant pushed and/or kicked [Papageorge]." Count III alleged that, in committing the battery, defendant knew that James Papageorge was 60 years of age or older. See 730 ILCS 5/5-5-3.2(b)(3)(ii) (West 2018).

¶ 5    At trial, James Pappageorge (James) testified that he was born on January 1, 1941. As of January 2019, when the incident occurred, defendant was married to James's daughter, Maria Pappageorgiou (Maria).[1] James, his wife Fotini, and Maria lived with defendant in a house that defendant and Fotini co-owned.

¶ 6    One evening in late January 2019, James was watching television with his wife when he heard defendant and Maria arguing upstairs. Defendant was yelling very loudly, calling Maria a whore and cursing at her. James went upstairs because he was afraid that defendant would choke her.

¶ 7    James found defendant and Maria very close to each other. Defendant was still yelling at Maria. When James told defendant to leave, defendant said, "Get out of here," placed his hands on James's chest, and pushed him. James fell backward, almost falling. Defendant also kicked James, hitting his hand. As James was leaving the room, defendant slammed the door on his finger,

_____

[1] The record does not reveal why James and Maria spelled their surnames differently.

cutting it. James was taken to the hospital, where the tip of his finger was initially sutured but later amputated.

¶ 8     James testified that he suffered from asthma.  He was "[v]ery offended" at being pushed by defendant.

¶ 9     Maria testified that, on January 25, 2019, defendant called and said that he had been in a car accident.  When he got home, he wanted her to drive him to his car and to work.  She refused.  Defendant became very angry and began yelling and cursing at her while they were in their bedroom.

¶ 10     James came upstairs to the bedroom and asked defendant why he was talking to his daughter that way.  Defendant pushed James back, and James nearly fell.  Defendant said, "[G]et out of here, you old man."  Maria and James left the bedroom through a door leading to her son's playroom.  As James was trying to close the door, defendant kicked him in the hand.

¶ 11     The jury found defendant guilty of both counts, and the trial court sentenced him to two concurrent, two-year probation terms.  Defendant timely appeals.

¶ 12                                    II. ANALYSIS

¶ 13     Defendant challenges the sufficiency of the evidence to support his convictions of aggravated battery and domestic battery.  Specifically, defendant contends that the State failed to prove (1) as to both counts, that his conduct was insulting and provoking; and (2) as to the aggravated-battery count, that he knew that James was older than 60.

¶ 14     When reviewing the sufficiency of the evidence to support a conviction, we ask only " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "

(Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 15    Both charges alleged that defendant made physical contact of an insulting or provoking nature with James by "push[ing] and/or kick[ing]" him.  The element of insulting or provoking contact can be proved by the circumstances surrounding the defendant's conduct.  *People v. Ward*, 2021 IL App (2d) 190243, ¶ 62; see also *People v. d'Avis*, 250 Ill. App. 3d 649, 651 (1993) ("A particular physical contact may be deemed insulting or provoking based upon the factual context in which it occurs.").

¶ 16    In *Ward*, decided after the briefs here were filed, we observed: "While it is true that the victim is not required to explicitly testify that he or she felt insulted or provoked, the State is required to prove that the physical contact insulted or provoked the victim, not some third party." *Ward*, 2021 IL App (2d) 190243, ¶ 50.  We noted that " '[t]he domestic battery statute's plain language defines the offense in terms of contact *that insults or provokes the victim*, and the contact does not need to cause physical injury.' " (Emphasis in original.) *Ward*, 2021 IL App (2d) 190243, ¶ 50 (quoting *People v. Green*, 2011 IL App (2d) 091123, ¶ 23).

¶ 17    In *Ward*, the defendant was arguing with police officers when his wife attempted to intervene on his behalf.  The defendant yelled at her to " 'shut up' " and nudged her away. *Id.* ¶ 14.  She briefly lost her balance but did not fall.  At trial, she testified that she did not feel insulted, shocked, or provoked when the defendant moved her out of the way.  A third-party witness, however, testified that she was " 'shocked' " by the defendant's conduct. *Id.* ¶ 11.

¶ 18    We held that the trial court erred in denying the defendant's motion for a directed finding based on insufficient evidence that the defendant's conduct insulted or provoked his wife.  We noted that the wife was intervening on her husband's behalf while he was involved in a heated

argument with a police officer. Though the defendant pushed her aside, he held onto her arm to keep her from falling. We also emphasized (1) the wife's testimony that she was not insulted or provoked by the push and (2) the lack of evidence that the wife reacted to the push in a manner to suggest that she was insulted or provoked by it. *Id.* ¶¶ 59-60, 66-67, 80.

¶ 19 By contrast, in *People v. DeRosario*, 397 Ill. App. 3d 332, 334-35 (2009), we held that the evidence proved insulting and provoking contact although the defendant merely brushed against the victim's leg. We noted that the incident occurred in the context of a failed relationship, the defendant had been stalking the victim, and he deliberately sought out a seat near the victim so that he could come in contact with her. *Id.* at 334.

¶ 20 The context of defendant's conduct aligns this case more with *DeRosario* than *Ward*. Defendant was yelling at and berating his wife. James, her father, intervened because he feared for her safety. Defendant responded by insulting the 78-year-old James and shoving him away. Defendant followed this up by kicking him and slamming the door on him. Unlike the victim in *Ward*, James testified that he was "[v]ery offended" when defendant pushed him. A reasonable jury could conclude that defendant's physical contact with James was insulting or provoking.

¶ 21 Defendant's contention that James "imposed himself into the middle of a marital dispute" is a strained reading of the record. James was in his own home. Both he and Maria testified that defendant was yelling loudly at Maria, insulting and cursing at her. James feared for his daughter's safety. James hardly "imposed himself" on the situation by questioning defendant's objectionable treatment of James's daughter. Before James could intervene further, defendant insulted him, too, and pushed him away.

¶ 22 Defendant points to the prosecutor's statement in closing argument that James "was clear that he was insulted and provoked when the defendant shoved him in the chest." Defendant argues

that the State thereby limited the jury to consider the initial shove in deciding whether defendant's conduct was insulting and provoking. However, he cites no authority in support of this contention, and we reject it. As noted, the victim need not explicitly testify that he or she was insulted or provoked (*Ward*, 2021 IL App (2d) 190243, ¶ 50), and, in any event, closing arguments are not evidence. Thus, the prosecutor's argument did not prohibit the jury from considering all of the evidence.

¶ 23 Defendant argues that there was no evidence that he knew his conduct would insult or provoke James. By its nature, "knowledge" is ordinarily proven by circumstantial rather than direct evidence. *People v. Nash*, 282 Ill. App. 3d 982, 985 (1996). Under the above-described circumstances, any reasonable person would know that his conduct was likely to insult or provoke the victim. The jury could properly find that defendant did not reasonably believe that he was only exercising his right "to remove an uninvited third party from a marital discussion."

¶ 24 Defendant further contends that the State did not prove, as to aggravated battery, that he knew James was older than 60. See 730 ILCS 5/5-5-3.2(b)(3)(ii) (West 2018). Defendant contends that (1) the only evidence of James's age was his testimony that he was 78 years old at the time of the incident, and (2) there was no evidence that defendant knew James's age. Again, knowledge can be, and often is, proved by circumstantial evidence. *Nash*, 282 Ill. App. 3d at 985.

¶ 25 In *People v. Jasoni*, 2012 IL App (2d) 110217, we held that the circumstantial evidence proved that the defendant knew that the victim was at least 60 years old. The defendant was married to the victim's daughter for 14 years, and they had a son together. The defendant paid rent to the victim for an apartment that defendant and his son shared with the victim's son. The victim was frequently at the apartment to visit her grandson. We noted that the victim was 68 years old, well above the statutory minimum, and that the defendant's close relationship with her

made it likely that he knew she was at least 60. *Id.* ¶ 22. Finally, we observed that, because the victim testified, the jury could observe her appearance and decide whether "it provided an indication of her age." *Id.*; see also *People v. Sanders*, 2021 IL App (3d) 190728-U, ¶ 26 (trial court, as factfinder, could make observations about the victim's physical characteristics and mannerisms to decide whether they indicated the victim's age).

¶ 26    This case is similar to *Jasoni*. Defendant was married to James's daughter, and James lived with them. At 78, James was nearly 20 years older than the statutory minimum. And the jury, which saw him testify, could decide whether his appearance and mannerisms should have informed defendant that he was at least 60 years old.

¶ 27                                III. CONCLUSION

¶ 28    We affirm the judgment of the circuit court of McHenry County.

¶ 29    Affirmed.